384 S.E.2d 173

**ASHLAND OIL, INC., a Corporation,**

**v.**

**Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, and Gladys Y. Arnoldt, et al.**

**No. 19033.**

Supreme Court of Appeals of West Virginia.

July 28, 1989.

---

**16.** *See* W.Va.Code § 21–5C–3(a).

E. Glenn Robinson and Charles R. McElwee, Robinson & McElwee, Joseph R. Goodwin and Richard E. Rowe, Goodwin & Goodwin, Charleston, and Stanley M. Chesley, Waite, Schneider, Bayles & Chesley Co., Cincinnati, Ohio, for appellants.

Rudolph L. diTrapano, P. Rodney Jackson, Joshua I. Barrett, and Debra L. Hamilton, Ditrapano & Jackson, Charleston, for appellees.

BROTHERTON, Chief Justice:

The plaintiffs, citizens from Kentucky and West Virginia, filed suit against the defendant, Ashland Oil, Inc., a Kentucky corporation, in the Circuit Court of Kanawha County, West Virginia, on March 23, 1989. Only the plaintiffs were present at a March 31, 1989, hearing at which Circuit Court Judge Tod J. Kaufman granted the plaintiffs' motion for a preliminary injunction and ordered Ashland to "cease from causing or allowing any unusual particulate emissions of visible fallout or other unusual emissions, including sulfur dioxide, to escape or leave the boundaries of defendant's plant property."

After the preliminary injunction order was granted on March 31, 1989, Ashland did not seek review or dissolution of the order in the Circuit Court of Kanawha County.[1] Instead, on April 3, 1989, pursuant to 28 U.S.C. § 1441, Ashland removed the case to the United States District Court for the Southern District of West Virginia, where they filed a motion to dissolve the preliminary injunction. The plaintiffs responded by filing a motion to remand, which was heard by Chief Judge Charles H. Haden, II, in the District Court on April 13, 1989. On April 5, 1989, District Court

Judge Dennis R. Knapp denied Ashland's motion to dissolve the preliminary injunction order, stating that it would be premature to rule on the merits of the dissolution motion while the plaintiffs' remand motion was pending. Chief Judge Haden granted the plaintiffs' motion to remand on jurisdictional grounds on April 25, 1989.

Judge Kaufman heard oral arguments on Ashland's motion to dissolve the preliminary injunction or, alternatively, to grant a stay thereof, on April 25, 1989. However, argument was limited to the legal issues, as Judge Kaufman stated on the record that he informed Ashland's counsel "that I would prefer to limit, at least this hearing, to legal arguments...." Judge Kaufman subsequently denied Ashland's motion and declared that the injunction would remain in effect.

On April 29, 1989, Ashland petitioned this Court for a writ of prohibition, seeking to prohibit the enforcement of the preliminary injunction and to suspend the preliminary injunction order pending this Court's ruling on their request. Ashland argued that the trial court violated its due process rights procedurally at the preliminary injunction hearing and substantively with the resulting injunction order. On May 2, 1989, we issued a rule to show cause why a writ of prohibition should not be awarded, along with a stay of the preliminary injunction order. Oral arguments before this Court were scheduled for June 6, 1989.

On May 16, 1989, the plaintiffs filed for a rehearing of their motion for a preliminary injunction "in order to assure that Ashland has a full opportunity to present its posi-

---

1. West Virginia Code § 53-5-8 (1981) provides, in relevant part, that:

 After an injunction is awarded or denied in any such case, at any time prior to final adjudication, any party to the proceedings, after reasonable notice to all other parties of record, which notice shall not in any case exceed five days, may move for a hearing on any particular issues or phases of the case which may properly be heard interlocutorily. Such hearing may, in the discretion of the court or judge, be had at the time the motion is made but shall be commenced within the ten days next thereafter, unless by consent of

all parties appearing the hearing is continued until a later date. At any such hearing, in term time or in vacation, any party to the proceedings may be present in person or by counsel and may present such witnesses, cross-examine witnesses and offer such testimony and evidence as may be pertinent to the issues then before the court or judge, as the case may be. The court or judge, upon such hearing and the record in the case, shall render a decision without delay, and may continue or dismiss the injunction or may enlarge or modify the same, as may be warranted.

tion." Ashland responded by opposing the plaintiffs' motion on May 18, 1989, stating that "plaintiffs are absolutely mistaken in their characterization of the healing effect of a rehearing." Ashland asked the circuit court to deny the plaintiffs' motion or defer any action until this Court ruled on their petition for a writ of prohibition.

The plaintiffs filed a response to Ashland's petition for a writ of prohibition on May 27, 1989. It was in this response that the plaintiffs presented the particularly interesting argument that Ashland did not deserve notice of the March 31, 1989, hearing because evidence of Ashland's past misconduct "led plaintiffs' counsel to conclude that it was appropriate in this case to ask for the preliminary injunction without notice to Ashland."

The oral arguments of the parties were heard by this Court on June 6, 1989. In an order entered June 15, 1989, we granted Ashland's request for a writ prohibiting Judge Kaufman from enforcing the March 31, 1989, injunction order.

 Our decision was based primarily on the conclusion that Judge Kaufman abused his discretion by holding an *ex parte* hearing and issuing the resulting injunction when the record disclosed that there was ample opportunity for the plaintiff to advise Ashland of the March 31, 1989, hearing. We stated in our June 15, 1989, order that "[f]or reasons to be discussed in an opinion to follow, we believe that a trial judge should be guided by principles designed to minimize the harm done by the issuance of an injunction." We have concluded that the existing rules pertaining to the issuance of preliminary injunctions in West Virginia do not adequately protect the due process rights of parties that are enjoined.

In West Virginia, a party that has not received notice may be enjoined by a preliminary injunction of indefinite duration. West Virginia Code § 53–5–8 (1981) provides, in part, that "any court or judge may require that reasonable notice shall be given to the adverse party ... if in the opinion of the court or judge it be proper that such notice should be given." [2]

Similarly, West Virginia's trial court rules leave the decision on whether to require notice and a hearing within the discretion of the court, stating that, "[n]o application for an injunction ... shall be considered by the court, unless interested parties or their counsel are notified of the place where and the time when such application shall be made. This rule, however, *for reasons deemed sufficient to the court,* may be disregarded...." *W.Va.Trial Ct.R.* V(c) (emphasis added).

Although the constitutionality of the discretionary notice provision in W.Va.Code § 53–5–8 has been questioned,[3] we have upheld it in the past,[4] stating that "on balance it assures the continued good order of society by giving an immediate remedy to persons suffering from unlawful interference with the exercise of their rights." *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672, 677 (1975). The party enjoined upon an *ex parte* motion may resort to filing a motion to dissolve the preliminary injunction and, if unsuccessful in the circuit court, the party can then appeal an adverse ruling to this Court. W.Va.Code § 58–5–1(g).[5]

2. Rule 65 of the West Virginia Rules of Civil Procedure states only that "[t]he practice respecting preliminary injunctions shall be in accordance with the practice heretofore followed in this State, including the use of a verified complaint or supporting affidavit." *See generally* Olson, *Modern Civil Practice in West Virginia,* §§ 9.4, 9.5 (1984).

3. *See* Note, *Preliminary Injunctions in West Virginia—Discretionary Notice and Due Process,* 78 W.Va.L.Rev. 113 (1975).

4. In syllabus point 1 of *Kalbitzer v. Goodhue,* 52 W.Va. 435, 44 S.E. 264 (1903), this Court recognized that "a circuit judge, or judge thereof in vacation, on application for injunction, may exercise a sound discretion in the matter of requiring notice to be given to the adverse party, or his attorney at law or in fact, of the time and place of moving for it before the injunction is awarded."

5. West Virginia Code § 58–5–1(g) (1966) provides, in part, that:

A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from, or a writ of error or supersedeas

West Virginia's injunction procedures differ from those found in the Federal Rules of Civil Procedure. Federal Rule 65(a)(1) states that "[n]o preliminary injunction shall be issued without notice to the adverse party." However, Rule 65(b) permits a court to grant an *ex parte* temporary restraining order, not to exceed ten days in duration, if:

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Rule 65(d) sets forth the permissible form and scope of the resulting injunction or restraining order:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

As its discretionary notice provisions would suggest, West Virginia's injunction procedures are not nearly as exacting as those found in the federal rules. However, in our June 15, 1989, order granting Ashland's petition for a writ of prohibition, we found that Judge Kaufman failed to comply with even these less stringent standards, specifically Rule 52(a) of the West Virginia Rules of Civil Procedure.

Rule 52(a) provides that "in granting or refusing preliminary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." We concluded that Judge Kaufman's order was vague and we reiterated our position that "Rule 52(a) is mandatory and where the findings of fact and the conclusions of law are not separately made by the trial court or correctly appear in an opinion, the case may be remanded to the trial court for the purpose of complying with this Rule." *National Grange Mutual Insurance Co. v. Wyoming County Insurance Agency, Inc.,* 156 W.Va. 521, 528, 195 S.E.2d 151, 155–56 (1973).

Ashland presents this Court with a persuasive argument concerning the validity of W.Va.Code § 53–5–8. In addition to the discretionary notice provision, Ashland cites the fact that the statute does not require any showing of extraordinary or compelling circumstances before an *ex parte* injunction can be granted, nor does it limit the duration of an *ex parte* injunction. Although the discretionary notice requirement "has had a relatively unfettered existence since its inception in 1849",[6] Ashland contends that if we were to subject this statute to a modern due process analysis, we would conclude that, like other West Virginia statutes before it,[7] W.Va.Code § 53–5–8 should fall because of its due process shortcomings.

---

to, a judgment, decree or order of such circuit court in the following cases:

\* \* \* \* \* \*

(g) In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction ...

**6.** *Preliminary Injunctions in West Virginia—Discretionary Notice and Due Process,* 78 W.Va. L.Rev. 113, 115 (1978).

**7.** *See Sauls v. Howell,* 172 W.Va. 528, 309 S.E.2d 26 (1983) (statute permitting *ex parte* suggestion of assets violates due process rights); *State ex rel. Payne v. Walden,* 156 W.Va. 60, 190 S.E.2d 770 (1972) (statutory distress warrant procedure violates due process rights); *Union Barge Line Corp. v. Marble Cliff Quarries Co.,* 374 F.Supp. 834 (S.D.W.Va.1974) (West Virginia statutory scheme for prejudgment garnishment denies due process); *Straley v. Gassaway Motor Co., Inc.,* 359 F.Supp. 902 (S.D.W.Va.1973) (invalidating West Virginia improver's lien statute).

The absence of extraordinary circumstances justifying the failure to notify Ashland of the March 31, 1989, hearing is obvious to this Court. Although fact-finding by the trial court was minimal, we nonetheless are aware that the so-called "unusual emissions" complained of by the plaintiffs were not part of a sudden, dangerous, or life-threatening invasion of their property. Instead, as the plaintiffs themselves indicated in their motion for the preliminary injunction, "[f]or *at least the past year*, such unusual emissions have frequently caused the plaintiffs' property to be covered with deposits of dust, powder, soot, grime and/or an oily substance.... [t]he substances are of unknown chemical composition." (Emphasis added.)

■ An *ex parte* preliminary injunction is an extraordinary remedy which is justified only under extraordinary circumstances. Although the record in this case contains no evidence of an emergency requiring immediate action, Ashland did not receive notice of the hearing and was enjoined by a vague order prohibiting them from allowing "unusual emissions" to escape the boundaries of their plant. We must therefore conclude that Judge Kaufman abused the discretion vested in him by W.Va.Code § 53–5–8 when he granted the plaintiffs' motion for a preliminary injunction without Ashland first receiving notice of the hearing and an opportunity to be heard.

In syllabus point 2 of *State ex rel. Payne v. Walden*, 156 W.Va. 60, 190 S.E.2d 770 (1972), we stated that:

> When one is deprived of a right, it matters not that the deprivation is minimal. A restriction of a property right, temporarily or permanently, is nevertheless a prohibited curtailment of a right protected by the Constitution when such is accomplished without notice or hearing, absent a showing of a special or extraordinary State or creditor interest.

After reviewing the circumstances under which the *ex parte* preliminary injunction was granted in this case, we have concluded that adherence to some of the standards set forth in Rule 65 of the Federal Rules of Civil Procedure would more adequately assure that parties to West Virginia's injunction procedures are accorded due process of law. Although the effect of an *ex parte* order granting a preliminary injunction remains the same under W.Va.Code § 53–5–8, a court shall grant such an injunction only if it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition. The applicant's attorney must certify to the court the efforts, if any, which have been made to give the notice and the reasons supporting any claim that notice should not be given.

Rule 52(a) of the West Virginia Rules of Civil Procedure states that "in granting or refusing preliminary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." More specifically, we now state that an order granting a preliminary injunction shall set forth the reasons for its issuance; shall be specific in its terms; and shall describe in reasonable detail, and not by reference to a complaint or other document, the act or acts sought to be restrained.

■ A second issue raised by both parties which merits only brief discussion at this point in the proceedings concerns the applicability of the United States Supreme Court's decision in *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), to the facts of this case.

Ashland argues that under *International Paper*, the preliminary injunction order entered by the Circuit Court of Kanawha County is an unlawful regulation of an out-of-state source of air emissions by the State of West Virginia. It is the plaintiffs' position, however, that the Supreme Court held that the federal Clean Water Act[8] does not preempt a state common law nuisance action initiated in a state court

---

**8.** 33 U.S.C.S. §§ 1251 *et seq.* (1987).

against an out-of-state source of water pollution.

International Paper Co., located in New York, discharged effluents into Lake Champlain near the Vermont border pursuant to a permit issued by the Environmental Protection Agency. However, in 1978, Vermont landowners filed a class action suit against the company, alleging that the discharges were a continuing nuisance under Vermont common law. The issue finally addressed by the United States Supreme Court in 1987 was "whether the [Clean Water] Act preempts a common-law nuisance suit filed in a Vermont court under Vermont law, when the source of the alleged injury is located in New York." 479 U.S. at 483, 107 S.Ct. at 807, 93 L.Ed.2d at 891.

The Court focused its opinion upon two sections of the Clean Water Act, together known as the "savings clause." Section 510 of the Act, the state law retention provision, states in part:

> Except as expressly provided ..., nothing in this chapter shall ... be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States. 33 U.S.C. § 1370 [33 USCS § 1370].

And the citizens suit provision, § 505(e) provides that:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief...." 33 U.S.C. § 1365(e) [33 USCS § 1365(e)].

479 U.S. at 485, 107 S.Ct. at 808, 93 L.Ed.2d at 892. The Court found that § 505(e) "merely says that '[n]othing *in this section*,' i.e., the citizen suit provisions, shall affect an injured party's right to seek relief under state law; it does not purport to preclude preemption of state law by other provisions of the Act," while § 510 "preserves the authority of a State 'with respect to the waters (including boundary waters) of such Stat[e].' ... The savings clause then, does not preclude preemption of the law of an affected State." 479 U.S. at 493, 107 S.Ct. at 812, 93 L.Ed.2d at 897–98.

Justice Powell delivered the opinion of the Court and concluded that "[n]othing in the Act prevents a court sitting in an affected State from hearing a common law nuisance suit, provided that jurisdiction otherwise is proper." However, he added that both the District Court and the Court of Appeals erred in concluding that Vermont law would govern the litigation. "The application of affected-state laws would be incompatible with the Act's delegation of authority and its comprehensive regulation of water pollution. The Act preempts state law to the extent that the state law is applied to an out-of-state point source." 479 U.S. at 500, 107 S.Ct. at 816, 93 L.Ed.2d at 902.

"Cross-citation in air and water cases 'is legion, so much so that the two regions in many ways can be viewed as a single body of evolving law.'" 1 W. Rogers, *Environmental Law—Air and Water* § 3.1(A)(2) (1986). Although *International Paper* involved interstate water pollution and the preemptive effect of the Clean Water Act, the rationale of *International Paper* may be extended to both air and hazardous waste statutes. For example, a citizen suit provision and saving clause virtually identical to that of the Clean Water Act can be found in the Clean Air Act.[9]

However, as the case before us now stands, the exact nature and/or composition of the "unusual emissions" from Ashland's plant is unknown. Thus, whether these emissions are regulated by the Clean

9. *See* Comment, *Federal Preemption of State Law Environmental Remedies After International Paper Co. v. Ouellette,* 49 La.L.Rev. 193, 202 (1988), in which the author "concludes that after *International Paper,* only the common law of the source state should apply to interstate pollution disputes governed by the Clean Air Act, which deals with air pollution regulation, and the Resource Conservation and Recovery Act (RCRA), which deals with hazardous waste regulation." *Id.* at 194.

Air Act, thereby preempting West Virginia's statutory or common law, is also unknown at this point.[10] We find that *International Paper* requires the application of the statutory or common law of the source state to an interstate pollution dispute when the pollutants in question are regulated by the Clean Air Act. However, the procedural law of West Virginia shall be followed when the issues are being litigated in this State's courts.

For reasons set forth in the June 15, 1989, order and in this opinion, the writ prayed for by the petitioner, Ashland Oil, Inc., is granted.

Writ granted.

10. For a discussion of this and other related issues, *see* Comment, *Federal Preemption of State Law Environmental Remedies After International Paper Co. v. Ouellette,* 49 La.L.Rev. 193 (1988). The author states that "[t]he reasoning that preempts the affected state's law is inapplicable to pollutants that are unregulated by the Clean Air Act. The regulatory scheme is undisturbed by the imposition of common law liability for releases of unregulated pollutants. Only in the situation where the pollutants in question are regulated by the Clean Air Act is the law of the affected state preempted." *Id.* at 204.

 *See generally* Comment, *Preemption of Private Remedies in Interstate Water Pollution Disputes: International Paper Company v. Oullette,* 28 Nat.Resources J. 863 (1988); Glicksman, *Federal Preemption and Private Legal Remedies for Pollution,* 134 U.Pa.L.Rev. 121 (1985); Murchison, *Interstate Pollution: The Need for Federal Common Law,* 6 Va.J.Nat.Resources L. 1 (1986).