575 S.E.2d 362

CAMDEN–CLARK MEMORIAL HOS-
PITAL CORPORATION, a Corpora-
tion Plaintiff Below, Appellee,

v.

Sonya TURNER, Defendant
Below, Appellant.

No. 30459.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 9, 2002.

Decided Dec. 6, 2002.

Richard A. Hayhurst, Esq., Andrew C. Woofter, Esq., Law Office of Richard Hayhurst, Parkersburg, West Virginia, Attorneys for Appellee.

Hoyt Eric Glazer, Esq., Law Offices of Stuart Calwell, PLLC, Charleston, West Virginia, Attorney for Appellant.

McGRAW, Justice:

Appellant Sonya Turner contests the lower court decision to enjoin her from entering the premises of the hospital where she had worked as a clerk after the hospital presented evidence that Ms. Turner had made threats of violence against her supervisors and co-workers. The lower court first granted an *ex parte* temporary restraining order, and then subsequently granted both a preliminary and a permanent injunction. Ms. Turner claims that she did not threaten anyone, and that the hospital terminated her because of her support of a union organizing effort at the hospital. Because we find that the lower court erred in placing a burden on Ms. Turner to disprove the allegations made against her, we reverse the lower court's grant of a permanent injunction and remand the case with directions.

## I.

## FACTS

Appellant Sonya Turner worked at Camden–Clark Memorial Hospital in Parkersburg for over 18 years. Most recently, she worked as a clerk in a supply room of the hospital. On May 3, 2001, Ms. Turner's supervisors at the hospital suspended her for a week, with pay, allegedly to investigate claims that Ms. Turner had made threats against one or more of her co-workers. On May 10, 2001, at the request of the hospital, the Circuit Court of Wood County issued an *ex parte* temporary restraining order ("TRO") that restrained and enjoined Ms. Turner from entering the grounds of the hospital and "carrying out any act of physical violence or mayhem directed toward any employee, volunteer or officer of" the hospital. Supervisors at the hospital asked Ms. Turner to return to the hospital on May 11, 2001. When she returned as requested, her super-

visors told her that she was being terminated, and had an off-duty police officer serve her with a copy of the temporary restraining order and escort her from the building. Subsequently, the lower court granted a preliminary injunction, and then a permanent injunction, as we discuss below.

The parties dispute the facts that led up to the issuance of the temporary restraining order. The hospital maintains that Ms. Turner had made numerous threats against several of her co-workers, including comments that she owned a gun, that she might come to work and "shoot the place up," or "blow everyone away," or other statements to that effect. The hospital presented the lower court with affidavits from several co-workers who had overheard these statements and claimed to be in fear that Ms. Turner would carry out these threats.

Ms. Turner claims that the real reason behind the hospital's decision to suspend, and then terminate, her was that she was an ardent union supporter and was actively involved in the efforts of the United Steel Workers' Union to "organize" the hospital employees. Ms. Turner claims that the only potentially threatening statement she made was a joking comment made at a meeting at the local union hall when she said, in jest, that she "was so mad she could spit and felt like shooting someone." To support her argument on appeal, she notes that she was a vocal union supporter, wore a button in support of the union, attended many union meetings, and wrote of her experience in a pro-union publication. She also points to testimony of other co-workers, who stated they were never in any fear of Ms. Turner.

Upon being served with the temporary restraining order, Ms. Turner attempted to schedule a hearing to dissolve it the week of May 14, 2001, but was unable to so do because of a conflict with the court's schedule. Ms. Turner's counsel and counsel for the hospital agreed to an extension of the tempo-

rary restraining order until the court could hold a hearing. On May 23, 2001, Ms. Turner filed a Motion to Vacate and Dissolve the temporary restraining order. On June 5, 2001 she also filed an answer to the hospital's original complaint, denying the hospital's allegations and making counterclaims for retaliatory discharge and abuse of process.[1] However, in a hearing conducted on June 14, 2001, the lower court refused to dissolve the temporary restraining order and even refused to hear testimony from Ms. Turner or her witnesses, concluding that she had waived her rights to contest the temporary restraining order when she agreed to extend it beyond the time limits contained in the applicable rule.[2]

Ms. Turner then sought a peremptory Writ of Mandamus and/or Prohibition from this Court. This Court issued a Rule to Show Cause on June 27, 2001, directing the hospital and the circuit court to show why the requested writ should not be awarded "unless sooner mooted by the holding of a full evidentiary hearing in the underlying proceeding." As a result, the lower court agreed to hold an evidentiary hearing, effectively mooting the appellate process at that point. The court held a "hybrid" hearing on August 16, 2001, during which witnesses testified for each side. The parties characterize the hearing of August 16th either as an evidentiary hearing, a hearing on Ms. Turner's motion to dissolve the temporary restraining order, or a hearing to determine if the court should grant a preliminary injunction. After this hearing the court issued an order dated August 27, 2001, in which it denied Ms. Turner's motion to dissolve the temporary restraining order and granted a preliminary injunction[3] against Ms. Turner that effectively extended the prohibitions contained in the temporary restraining order.

The court set a date of September 14, 2001 for a hearing to consider whether the preliminary injunction should become a permanent

---

1. The procedural aspects of this case are somewhat convoluted, as is often true when a temporary restraining order is at issue, because a court often has before it simultaneously a request by the enjoined party to dissolve the temporary restraining order and a pending request by the initial party to grant a preliminary injunction.

2. W. Va. R. Civ. P. 65, discussed, *infra*.

3. Or, as stated in the August 27th order, "the *pendete lite* injunction heretofore awarded be, and it is hereby, retained in full force and effect."

injunction. Prior to the hearing, Ms. Turner requested a jury trial on her counterclaims, which the court refused. On September 14, 2001, the lower court conducted a bench trial, over Ms. Turner's objection, to determine if the injunction should become permanent. At that proceeding, Ms. Turner put on additional evidence, but the hospital, other than cross-examining Ms. Turner's witnesses, simply rested on the evidence it had already presented the court.

By order dated September 18, 2001, the court entered a permanent injunction against Ms. Turner that incorporated the terms of the temporary restraining order initially entered on May 10, 2001, and also taxed Ms. Turner with the cost of the proceedings. To date, no jury has heard Ms. Turner's claims of retaliatory discharge and abuse of process. Because we find that the lower court erred, we strike down the permanent injunction and remand this case with directions.

## II.

### STANDARD OF REVIEW

■ This case concerns the issuance of three distinct orders, that for the temporary restraining order, the preliminary injunction, and the permanent injunction. Because we find in this case that the court erred in granting the preliminary injunction, we set forth our standard of review for such orders. Typically, we apply a tripartite standard when reviewing the correctness of a preliminary injunction:

"In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary [preliminary] injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

Syl. pt. 1, *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996). *Accord, State ex rel. United Mine Workers of America, Local Union 1938 v. Waters*, 200 W.Va. 289, 296, 489 S.E.2d 266, 273 (1997).

■ To determine if the lower court has exceeded the bounds of its discretion in issuing the injunction, we must also examine the overall circumstances of the case and whether the court has made an attempt to balance the requisite factors:

The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.

Syl. pt. 4, *State ex rel. Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932). *Accord, Jefferson Cty. Bd. of Educ. v. Jefferson County Educ. Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990); *State ex rel. East End Assoc. v. McCoy*, 198 W.Va. 458, 481 S.E.2d 764 (1996). In making this "balancing" inquiry, we have followed the lead of the Fourth Circuit Court of Appeals:

Under the balance of hardship test the [lower] court must consider, in "flexible interplay," the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest.

*Jefferson County Bd. of Educ. v. Jefferson County Educ. Ass'n*, 183 W.Va. 15, 24, 393 S.E.2d 653, 662 (1990) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir.1985) (citation omitted)) (additional citations omitted). Finally, when considering the issuance of an *ex parte* temporary restraining order, we must determine if the lower court has abused its discretion with respect to the requirements of Rule 65 of the West Virginia Rules of Civil Procedure, which we discuss

below. With these standards in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

### A. Injunctive Relief

■ As we stated above, the injunction that is at issue in this case has three distinct elements, an *ex parte* temporary restraining order, a preliminary injunction, and a permanent injunction. Rule 65 of the West Virginia Rules of Civil Procedure and West Virginia Code § 53-5-1 *et seq.* govern the issuance of injunctions. When circumstances are not urgent, an aggrieved party will ask a court for a preliminary injunction, which requires notice to the adverse party.[4] However, when circumstances show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party" can be heard, a party may ask a court to issue, in lieu of a preliminary injunction, an *ex parte* temporary restraining order.

This term has not always been a part of our law on injunctions, but was introduced into our Rules of Civil Procedure in the wake of this Court's decisions in *Ashland Oil, Inc. v. Kaufman*, 181 W.Va. 728, 384 S.E.2d 173 (1989) and *United Mine Workers of Am., Local Union 1938 v. Waters*, 200 W.Va. 289, 489 S.E.2d 266 (1997).[5] In *Ashland*, the lower court granted an injunction against Ashland Oil without first providing notice. On appeal, this Court recognized that our court rules, which left decisions about notice to the discretion of the judge, differed from the federal rules, which allowed injunctions without notice only in special circumstances and with finite time limits.

■ Finding the federal rules superior to our own in this regard, the court stated:

"[W]e have concluded that adherence to some of the standards set forth in Rule 65 of the Federal Rules of Civil Procedure would more adequately assure that parties to West Virginia's injunction procedures are accorded due process of law." *Ashland Oil, Inc. v. Kaufman*, 181 W.Va. 728, 733, 384 S.E.2d 173, 178 (1989). The Court went on to fashion a syllabus point that incorporated the desired changes:

> Although the effect of an *ex parte* order granting a preliminary injunction remains the same under W. Va.Code § 53-5-8, a court shall grant such an injunction only if it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition. The applicant's attorney must certify to the court the efforts, if any, which have been made to give the notice and the reasons supporting any claim that notice should not be given.

Syl. pt. 3, *Ashland Oil, Inc. v. Kaufman*, 181 W.Va. 728, 384 S.E.2d 173 (1989). As the Court explained in the *Waters* case, the reason for making the applicant of an *ex parte* order jump through these additional procedural hoops is "[t]o assure that there is adequate protection of due process rights in the issuance of preliminary injunctions." *United Mine Workers of Am., Local Union 1938 v. Waters*, 200 W.Va. 289, 296, 489 S.E.2d 266, 273 (1997). *Waters* concerned an injunction sought by a mining company against union members who were picketing the mine. The lower court had granted an injunction to the company without notice to the union members, and this Court reversed that decision.

We note that in both of these cases, the Court referred to an "*ex parte* order grant-

---

4. "No preliminary injunction shall be issued without notice to the adverse party." W. Va. R. Civ. Pro. 65(a).

5. As explained by the authors of our handbook on West Virginia Civil Procedure:

> Rule 65 was amended and completely rewritten in 1998. The pre–1998 rule did nothing more than state that the former practice regarding preliminary injunctions shall be followed. The comprehensive version of Rule 65 that was adopted in 1998 was taken verbatim from its federal counterpart. The new version of Rule 65, to some extent, conflicts with prior practice. To the extent that procedural statute and case law conflict with new Rule 65, the rule should govern.

Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Litigation Handbook on West Virginia Rules of Civil Procedure 1019 (2002).

ing a preliminary injunction" and not to a "temporary restraining order." At the time of these opinions the term "temporary restraining order" was not officially present in our legal lexicon.[6] As Justice Starcher explained in his opinion in *Waters:*

"West Virginia's injunction procedures differ from those found in the Federal Rules of Civil Procedure." *Ashland Oil v. Kaufman,* 181 W.Va. 728, 732, 384 S.E.2d 173, 177 (1989) Unlike the federal court system, West Virginia law does not provide for "temporary restraining orders," but only "preliminary injunctions." *Compare West Virginia Rules of Civil Procedure* 65 [1960] *with Federal Rules of Civil Procedure* 65(b) [1987].

*Id.* 200 W.Va. 289, 294 n. 2, 489 S.E.2d 266, 271 n. 2. However, by April 6, 1998, Rule 65 of the West Virginia Rules of Civil Procedure has been amended to include the new term. The rule now states that no preliminary injunction may issue without notice to the adverse party, and the language of the rule suggests that a "temporary restraining order" is essentially a preliminary injunction of limited duration granted on an *ex parte* basis, subject to special requirements.[7] The rule states, in part:

(a) *Preliminary Injunction.*

(1) Notice.—No preliminary injunction shall be issued without notice to the adverse party. . . .

(b) *Temporary Restraining Order; Notice; Hearing; Duration.*—A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or

damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. . . .

W. Va. R. Civ. Pro. 65. Thus, we now have three species of "injunction" under our rules of civil procedure, the temporary restraining order, the preliminary injunction, and the permanent injunction.

■ In order to clarify the terminology and procedure for seeking injunctive relief *ex parte,* we hold that a party in a civil action who desires immediate injunctive relief without prior notice to the adverse party must make application for a temporary restraining order under Rule 65 of the West Virginia Rules of Civil Procedure. Both the applicant and the court must comply with the dictates of the rule, including applicable time limits. Nothing in our holding should be read to interfere with other proceedings that might provide some sort of *ex parte* relief, such as Family Court Proceedings,[8] Child Abuse and Neglect Proceedings,[9] Domestic Violence Proceedings,[10] or other circumstances already controlled by some other statute, rule, or regulation.

As suggested by its name, a temporary restraining order cannot exist indefinitely. In the event that a court grants an *ex parte* temporary restraining order, then our rules state the temporary restraining order will expire in 10 days without further order of the court or agreement by the parties to extend it:

65(a)(1) a preliminary injunction cannot be obtained without notice.

Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Litigation Handbook on West Virginia Rules of Civil Procedure 1028 (2002).

---

6. *See* note 5, *supra.*

7. Again, we refer to the Civil Procedure Handbook:

Under Rule 65(b) a temporary restraining order differs from a preliminary injunction, thought both serve the same purpose of maintaining the status quo. A temporary restraining order is generally limited in duration to 10 days, whereas a preliminary injunction generally remains until a final determination on the merits of the action. A temporary restraining order may be obtained *ex parte,* but under Rule

8. Such as proceedings under Rules 14 and 15.

9. Such as proceedings under Rule 16, or W. Va.Code § 49–6–9.

10. Such as proceedings under W. Va.Code § 48–27–403.

Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period....

*Id.*[11] In practice, this means that the applicant for a temporary restraining order who wished to enjoin a party on a continuing basis should request a hearing for his or her application for a preliminary injunction *before* the expiration of the temporary restraining order. Otherwise there may be a gap when the temporary restraining order has expired under the rule, but no preliminary injunction has yet issued.

■■■ Turning to the facts of this case, first we note that this Court does not agree with the earlier ruling of the circuit court, since mooted by subsequent decision, that Ms. Turner somehow waived her right to object to the temporary restraining order when she agreed to extend it beyond the deadline. As noted, Rule 65 states that a temporary restraining order will expire no later than ten days after issue, unless, before its expiration, the court extends it for another ten days, or unless "the party against whom the order is directed consents that it may be extended for a longer period." *Id.* In the instant matter, the court granted the temporary restraining order on May 10, 2001. Ms. Turner sought a hearing within ten days, but could not get one. Although she was under no obligation to do so, she agreed to extend that temporary restraining order. Clearly, agreeing to extend the term of the temporary restraining order does not waive the subject party's right to contest the

temporary restraining order, or any subsequent injunction.

■■■ Ms. Turner first argues that the lower court erred in granting the temporary restraining order. She claims that the hospital demonstrated, at best, its conjecture that Mrs. Turner *might* be violent. Her position is that the evidence offered by the hospital is insufficient for the court to interfere with her ability to go to the hospital for work, and that courts should not issue injunctive relief on such a speculative basis.

Rule 65 required the court to determine if "it clearly appear[ed] ... that immediate and irreparable injury, loss or damage" would result before the court could hear Ms. Turner's side of the story. Reasonable minds may differ on whether it was clearly apparent that Ms. Turner was going to injure someone. We note that nothing in the record suggests that Ms. Turner has ever harmed anyone in her life. However, we do not wish to second guess a trial court judge presented with evidence that a shooting might occur in the absence of court action. In the instant case, we feel that the hospital complied with the requirements of the rule, and that the lower court did not abuse its discretion in awarding the temporary restraining order. Although we believe that the likelihood that Ms. Turner would actually have harmed someone at the hospital is extremely low, we concur with the lower court that *had* there been a violent altercation, irreparable harm almost certainly would have resulted.

■■■ Although we do find that the court did not err when it granted the temporary restraining order, we are not of the same opinion concerning the court's grant of the preliminary injunction. Of concern to us is the fact that the lower court appears to have placed a burden on Ms. Turner to disprove the allegations against her. In its order of August 27, 2001, in which it denied Ms. Turners' motion to dissolve the temporary restraining order and allowed the temporary injunction to remain in force, the court noted

---

**11.** "The maximum 20 day life for a temporary restraining order may be extended for a longer period, if the party against whom the order is directed consents that it may be extended. See *Casey v. Planned Parenthood of Southeastern Pa.,* 14 F.3d 848 (3rd Cir.1994)." Civ. Pro Handbook at 1031.

that Ms. Turner "had failed to sustain her burden of proof."

The United States Supreme Court discussed this issue in a case concerning an employer who had sought a temporary restraining order, under the federal rules, against the members of a union:

> Situations may arise where the parties, at the time of the hearing on the motion to dissolve the restraining order, find themselves in a position to present their evidence and legal arguments for or against a preliminary injunction. In such circumstances, of course, the court can proceed with the hearing as if it were a hearing on an application for a preliminary injunction. At such hearing, as in any other hearing in which a preliminary injunction is sought, the party seeking the injunction would bear the burden of demonstrating the various factors justifying preliminary injunctive relief, such as the likelihood of irreparable injury to it if an injunction is denied and its likelihood of success on the merits.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435, 451 (1974)(footnote omitted). As the Court said in summation "The burden was on the employers to show that they were entitled to a preliminary injunction, not on the Union to show that they were not." *Id.* 415 U.S. at 443, 94 S.Ct. at 1126, 39 L.Ed.2d at 452.

Similarly, in this case, the burden of proof remained on the hospital, not Ms. Turner. Before the hospital approached the court with its request for injunctive relief, Ms. Turner was free to go where she pleased. It was the hospital, not Ms. Turner, that sought to change the status quo. While it is plain to us that the hospital put on significant evidence in support of the injunction, it is not clear to us that the court decided the issue with the correct burden of proof in mind. We also note that the hospital offered no new evidence at the permanent injunction hearing held on September, 14, 2001, thus the court necessarily relied upon its decision in its order of August 27, 2001. Because we are unable to say that the court applied the

burden of proof to the right party, we must reverse the trial court on this point.

Thus, we reverse the lower court's grant of the preliminary injunction, and, by necessity, strike down the court's grant of a permanent injunction as well. Of course, our holding puts us in a bit of a logical dilemma in that the removal of the permanent injunction could leave the hospital without any injunctive relief at all. That is, the temporary restraining order either expired under Rule 65 or ended when the court granted the preliminary injunction, and the preliminary injunction ended when the court granted the permanent injunction. However, because the parties have evidenced a willingness to cooperate in the past, and because we are not comfortable leaving the hospital without any temporary relief, under the unique facts of this case we believe it best to consider the temporary restraining order to be still in effect by virtue of the agreement of the parties, until such time as the lower court may conduct a new hearing on whether or not to grant the preliminary injunction.

### B. Counterclaims

Also of concern to this Court is the fact that Ms. Turner has not yet had the opportunity to present her wrongful discharge and abuse of process claims to a jury, even though more than a year and a half has passed since her discharge. While we recognize that the original proceeding to obtain the temporary restraining order should be considered a proceeding in equity, this does not mean that Ms. Turner's counterclaims should be ignored. As this Court has explained:

> Both the federal and state constitutional jury trial provisions grant the right to a jury trial "in suits at common law." Suits in equity were tried without juries. After the merger of law and equity (in 1938 in the federal courts), many cases contain both legal and equitable elements, usually in the form of the action or the relief sought. Under the circumstances, the Supreme Court has given an expansive reading of the seventh amendment. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)

(jury trial right in a case involving two discrete claims, one of which was triable by a jury).

*Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 77, 380 S.E.2d 238, 244 (1989) (other citations omitted). We have often declared the importance of the right to trial by jury in this State. In a recent case dealing with consumer contracts that called for arbitration instead of jury trials, this Court, after citing our Constitution, reaffirmed the central importance of our jury system:

> These constitutional rights—of open access to the courts to seek justice, and to trial by jury—are fundamental in the State of West Virginia. Our constitutional founders wanted the determinations of what is legally correct and just in our society, and the enforcement of our criminal and civil laws—to occur in a system of open, accountable, affordable, publicly supported, and impartial tribunals—tribunals that involve, in the case of the jury, members of the general citizenry. These fundamental rights do not exist just for the benefit of individuals who have disputes, but for the benefit of all of us. The constitutional rights to open courts and jury trial serve to sustain the existence of a core social institution and mechanism upon which, it may be said without undue grandiosity, our way of life itself depends.

*State ex rel. Dunlap v. Berger* 211 W.Va. 549, 560, 567 S.E.2d 265, 276.

■ Ms. Turner points out a potential danger of letting requests for injunctive relief interfere with jury trials in the context of employment cases. If such activity is permitted, an employer could, in theory, always seek an injunction before taking action adverse to an employee, and thus greatly reduce the likelihood that a jury would ever hear that employee's potential counterclaims. While we are in no way suggesting that this was the hospital's intended course of action, we think it prudent to clarify this issue and remove such a pernicious possibility. Thus, we hold that, if a civil action contains both a request for injunctive relief and a legal claim that would ordinarily be tried before a jury, a court must allow a jury to hear the legal claim before ruling on the question of permanent injunctive relief.

■ Clearly, Ms. Turner has a right to a jury trial for her claims of abuse of process and retaliatory discharge. In the event the court does not again grant a preliminary injunction, her claims should be heard a soon as practicable in a jury trial. If the court does again grant the hospital's preliminary injunction, Ms. Turner is entitled to try the merits of her counterclaim prior to the permanent injunction being resolved.

### IV.

### CONCLUSION

For the reasons stated, the order of the Circuit Court of Wood County is reversed, the temporary restraining order of May 10, 2001 is deemed to be in effect by agreement of the parties, and this case is remanded to the circuit court with directions to hold a hearing, on the earliest possible date, to decide anew whether the hospital is entitled to a preliminary injunction using the correct burden of proof. Should the circuit court grant the preliminary injunction, it must allow Ms. Turner to present her counterclaims to a jury before the court resolves the issue of the permanent injunction.

Reversed and remanded with directions.