# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Gregory Martin,**
**Plaintiff Below, Petitioner**

**vs.)  No. 18-0778** (Cabell County 18-C-200)

**The Unsafe Buildings Commission**
**of Huntington, West Virginia,**
**Defendant Below, Respondent**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gregory Martin, by counsel Jason Goad, appeals the Circuit Court of Cabell County's August 6, 2018, order denying him injunctive relief. Respondent The Unsafe Buildings Commission of Huntington, West Virginia, by counsel Scott Damron, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him injunctive relief and allowing respondent to proceed with the process of demolishing the residence.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 30, 2013, a fire broke out at 975 Madison Avenue in Huntington, West Virginia. The owner of the property, Joe Martin, died as a result of the fire. In August of 2013, the property passed to his estate. Mr. Martin's oldest son, Timothy Martin, was named the personal representative of the estate. In total, there are four sons who are heirs, including petitioner.

In October of 2014, the City of Huntington ("City") Building Inspector conducted an

---

[1]The residence in question has not been demolished yet as the circuit court granted a stay pending this appeal.

inspection of the house and issued a notice of violation, stating that the structure was unsafe for human occupancy due to the fire damage that had never been remediated. The notice provided that the owners had thirty days from the date the letter was postmarked to correct the damage. The notice also provided that the house would be submitted to respondent for consideration and that if no action was taken to remediate the house, it would be placed on the demolition list.[2]

In November of 2014, respondent issued a complaint setting an administrative hearing date of January 8, 2015, to address the condition of the house. The complaint alleged building, plumbing, and electrical code violations, as well as trash, debris, and other unsanitary conditions. The complaint was served upon Timothy Martin by certified mail on November 29, 2014.

One day prior to the hearing, Timothy Martin called respondent and advised that he would be unable to attend the hearing. On January 8, 2015, the hearing commenced. The notes from the hearing indicate that Timothy Martin "advised he was undecided what he was going to do with the property. He has several people interested in the property along with his brother had an interest to rehab it but feels like that will not happen." During the hearing, the state of the house was discussed, and, ultimately, respondent issued an order of demolition, finding that the house was "unsafe, dangerous or detrimental to the public welfare and should be demolished."

The house remained on the demolition list for some time, and the house continued to deteriorate. Further, the house attracted illegal activity. An accidental overdose occurred in the house around July of 2017, and an intentional fire was set in or around the house in September of 2017. The City continued with the demolition process by having the house tested and abated for asbestos, which was completed around February of 2018.

In April of 2018, petitioner filed a complaint in the circuit court seeking an injunction. Petitioner claimed that he intended to rehabilitate the house when probate was complete and the estate was closed. Petitioner asserted that Timothy Martin had been dilatory in his duties as the public representative of the estate, effectively leaving petitioner's hands tied in regard to rehabilitating the house. Petitioner further claimed that he would suffer irreparable harm if the house were demolished and that his "success on the merits is high." Petitioner also noted that rehabilitating the house would serve the public interest.

The circuit court held a hearing on the matter in July of 2018. Petitioner requested ninety days to begin rehabilitating the house. Petitioner claimed that nothing had been done to the house since 2013 because Timothy Martin "just dropped the ball." Petitioner claimed that he did not know the house was on the demolition list until "about three or four months ago." When asked whether he had talked to any contractors to obtain estimates, petitioner testified that he knew

a lot of people in the business, whether it is plumbing, electrical, painting,

---

[2]Respondent notes that it is the code enforcement agency for the City. "It evaluates potential unsafe structures, orders boarding and demolition, and monitors rehabilitation of unsafe structures by private owners." The City, however, carries out the demolitions.

whatever, and they have all told—and I have a project notebook that I have and I have got—I have all their names and numbers. They said if you need help, if you need advice, et cetera.

When asked again, petitioner admitted that he had obtained no estimate for repairs to the house because he intended to do the "vast majority of the work" by himself. Petitioner also admitted that he was unsure whether he would be able to purchase the shares of the house owned by two of his brothers as he was not on good terms with them. At the close of the hearing, the circuit court granted petitioner two weeks to determine whether his siblings would allow him to purchase their shares of the house.

The circuit court reconvened the hearing later in July of 2018. Petitioner claimed that he had done a significant amount of work on the house in the two weeks, but had no success in working with Timothy Martin in regard to purchasing his share of the house. Petitioner advised that he was going to attempt to have his brother removed as personal representative of the estate. The circuit court noted that it had driven by the house twice in the past two weeks and stated that the house "was in much worse condition than actually I thought it was." The court further noted that the house was "un-repairable" and that strong wind could "blow it over." Ultimately, the circuit court denied petitioner injunctive relief, finding that the house presented a substantial risk of collapse, was unsafe for its use as a dwelling, and that, due to the severe dilapidation of the house, the land would be more valuable without the structure. It is from the August 6, 2018, order that petitioner appeals.

Our review of the circuit court's grant of a temporary injunction has three parts:

> "'In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996).

Syl. Pt. 1, *Camden-Clark Mem'l Hosp. Corp. v. Turner*, 212 W. Va. 752, 575 S.E.2d 362 (2002).

On appeal, petitioner argues that he should have been granted an injunction, given that his claims are meritorious under the hardship test. According to petitioner, he will suffer irreparable harm because his "childhood home is gone forever" if respondent is allowed to proceed with demolition. Additionally, petitioner contends that respondent will incur no harm, but will actually benefit because petitioner will be able to remediate the house, aiding surrounding property values. Petitioner also claims that his likelihood of success on the merits is

3

high and that the public interest is also served by his remediation of the house. However, we find that petitioner's arguments are without merit.[3]

This Court has consistently articulated the criteria for a preliminary injunction stating that

> [t]he customary standard applied in West Virginia for issuing a preliminary injunction is that a party seeking the temporary relief must demonstrate by a clear showing of a reasonable likelihood of the presence of irreparable harm; the absence of any other appropriate remedy at law; and the necessity of a balancing of hardship test including: "(1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." *Jefferson County Bd. of Educ. v. Jefferson County Educ. Ass'n*, 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985)[)].

*State ex rel. McGraw v. Imperial Mktg.*, 196 W. Va. 346, 352 n.8, 472 S.E.2d 792, 798 n.8 (1996).

Petitioner fails to demonstrate that he was entitled to the injunction he seeks. In his brief on appeal, petitioner cites to no law for the proposition that his house should be taken off the demolition list. Indeed, petitioner does not even seem to contest the fact that his house was deemed, and continues to be, unsafe and uninhabitable. Pursuant to the version of West Virginia Code § 8-12-16 in effect at the time respondent held an administrative hearing regarding the condition of the house, municipalities were granted the authority to adopt ordinances regulating the demolition

> of any dwellings or other buildings unfit for human habitation due to dilapidation, defects increasing the hazard of fire, accidents or other calamities, lack of ventilation, light or sanitary facilities or any other conditions prevailing in any dwelling or building, whether used for human habitation or not, which would cause such dwellings or other buildings to be unsafe, unsanitary, dangerous or

---

[3]In support of his argument, petitioner claims that the notice of violation issued by respondent was defective because it failed to provide the allotted time to respond to the notice, as required by West Virginia Code § 8-12-16(f)(2)(A). However, the code section in effect at the time the violation was issued did not require a statement regarding the allotted response time. *See* W. Va. Code § 8-12-16(f) (2014). Moreover, petitioner never raised issue with any defect in the notice of violation below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.,* 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find that petitioner is entitled to no relief in this regard.

detrimental to the public safety or welfare.

W. Va. Code § 8-12-16(a) (2014).

Pursuant to an ordinance adopted by the City at the time of the administrative hearing, a nuisance potentially subject to demolition included any building "unfit for human habitation due to dilapidation, defects increasing the hazard of fire, accidents or other calamities, lack of ventilation, light or sanitary facilities or any other conditions prevailing in any dwelling or other building to be unsafe, unsanitary, dangerous or detrimental to the public welfare." Huntington, W. Va. Ordinance § 1739.01 (2007). At the administrative hearing regarding the house, an official from the Cabell County Health Department noted that there was a "large fire load on the back porch." The Chief Building Inspector further noted that there had been a fire in the residence in 2013 and nothing had been done to the structure since. Based on the facts before it, respondent ordered the house to be demolished because it was "unsafe, dangerous or detrimental to the public welfare."

At the hearing held on petitioner's request for injunctive relief in 2018, he provided no evidence suggesting that respondent's prior finding that the house was unsafe was invalid or incorrect. Rather, petitioner merely argued that he desired to rehabilitate the house. However, this argument is irrelevant to the question of whether the house should be taken off of the demolition list. Petitioner does not dispute that the house is no longer safe or inhabitable. In fact, evidence presented at the hearing showed that the house continued to dilapidate and was in worse condition than previously thought. While we find petitioner's argument regarding his intent to rehabilitate the house to be irrelevant, to the extent he makes that argument we find that he failed to establish that he would be successful in rehabilitating the house. Petitioner was unable to provide any estimates regarding the repairs of the house and suggested that he intended to undertake the "vast majority" of the work himself. Petitioner provided no real plan for the repairs needed, nor did he submit evidence that he was financially able to make the repairs. Petitioner also failed to establish that he would be irreparably harmed by the demolition of the house. Petitioner would still maintain his interest in the lot after the house was demolished. In fact, the circuit court noted that the value of the land was worth more than the house itself. Additionally, contrary to petitioner's argument, respondent could experience harm if not permitted to demolish the house. Respondent is responsible for protecting the interests of the residents of Huntington. According to respondent, the house is in the middle of a residential block where the other houses are neatly maintained. Permitting the structure to remain decreases the property values of the other houses, as well as allows criminal activity to continue. Based on the foregoing, we find that petitioner failed to demonstrate that his house should be removed from the demolition list or that he will be irreparably harmed by the demolition of his house. Accordingly, we find no abuse of discretion in the circuit court's decision to deny petitioner injunctive relief.

For the foregoing reasons, the circuit court's August 6, 2018, order is hereby affirmed.

Affirmed.

**ISSUED:** January 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison