591 S.E.2d 318

**STATE of West Virginia ex rel. E.I. DUPONT DE NEMOURS AND COMPANY, Petitioner,**

v.

**The Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County, West Virginia; and Jack W. Leach, William Parrish, Joseph K. Kiger, Darlene G. Kiger, Judy See, Rick See, Jack L. Cottrell, Carrie K. Allman, Sandy Cowan, and Aaron B. McConnell, Respondents.**

Nos. 31428, 31429.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Dec. 5, 2003.

Dissenting opinion of Justice McGraw Dec. 9, 2003.

---

McGraw, J., filed a dissenting opinion.

Thomas V. Flaherty, Esq., Flaherty, Sensabaugh & Bonasso, PLLC, Charles L. Woody, Esq., Dennise R. Smith–Kastick, Esq., Spilman Thomas & Battle, PLLC, Charleston, Diana Everett, Esq., Daniel A. Ruley, Esq., Steptoe & Johnson, PLLC, Parkersburg, Charles G. Cole, Esq., Steptoe & Johnson, LLP, Washington, DC, for Petitioner.

Larry A. Winter, Esq., Winter Johnson & Hill PLLC, R. Edison Hill, Esq., Harry G. Deitzler, Esq., Hill, Peterson, Carper, Bee & Deitzler, PLLC, Charleston, Gerald J. Rapien, Esq., Robert A. Bilott, Esq., Taft, Stettinius & Hollister LLP, Cincinnati, OH, for Respondents.

MAYNARD, Justice.

The petitioner, E.I. duPont de Nemours and Company ("duPont"), invokes this Court's original jurisdiction seeking a writ of prohibition in case number 31428 to enjoin Judge George W. Hill from enforcing the court's order which was entered on May 1, 2003. The order granted injunctive relief to the plaintiffs by requiring duPont to provide C–8 blood testing for all members of the class. In case number 31429, duPont requests that Judge Hill be prohibited from

proceeding further in this case until he certifies the disqualification motion to the Chief Justice of this Court, or, in the alternative, that the judge be prohibited from further participating in the case. We consolidated these cases for consideration in this Court. Because duPont was not afforded notice in case number 31428, we grant the writ of prohibition as requested. In case number 31429, the Chief Justice will take the disqualification motion under advisement.

## I.

### FACTS

The facts of these consolidated cases are intertwined. In August 2001, the respondents, thirteen named plaintiffs ("plaintiffs"), brought this class action lawsuit on behalf of all residents situated in the mid-Ohio valley region. The plaintiffs allege they have suffered harm which is attributable to the presence of ammonium perfluoroctanoate, a detergent-like material more commonly known as C–8, APFO, or PFOA, in their drinking water. DuPont's Washington Works Plant, located in Wood County, West Virginia, utilizes C–8 in the manufacture of fluoropolymers, such as Teflon®. The plaintiffs originally brought this class action lawsuit against duPont and the Lubeck Public Service District,[1] asserting various statutory and common law claims, including trespass, battery, nuisance, negligence, fraud, and violation of the West Virginia Consumer Protection Act. The plaintiffs seek relief in the form of abatement, compensatory damages, punitive damages, and medical monitoring.

On April 10, 2002, Judge Hill certified the class under West Virginia Rule of Civil Procedure 23.[2] The "class" is defined as individuals in West Virginia and Ohio "whose drinking water is or has been contaminated with ammonium perfluoroctanoate (a/k/a 'C–8') attributable to releases from DuPont's Washington Works plant[.]" In a subsequent hearing, "contamination" was defined by the judge as "quantifiable levels" rather than "detectable levels."[3] In that same hearing, Judge Hill determined that "[t]he people of Parkersburg are not within that definition[ ]" because the level of C–8 in the Parkersburg water supply is detectable but not quantifiable.

On October 10, 2002, while discovery was ongoing, Judge Hill notified the parties that he would temporarily recuse himself from the case because he had retained Lubeck's counsel, Richard Hayhurst, to represent him in an unrelated civil action. For approximately five months, discovery proceeded without judicial supervision. Then, on March 4, 2003, duPont was informed by Mr. Hayhurst that he was going to terminate his representation of Judge Hill and that the judge would resume his administration of the case on April 18, 2003.

The next hearing in the case was held on April 18, 2003. The parties were prepared on that date to address two pending motions: (1) a motion for partial summary judgment against duPont on liability for plaintiffs' medical monitoring claims and (2) a motion for sanctions submitted by the plaintiffs based upon an alleged violation of discovery obligations relating to e-mails. The plaintiffs did not file a written request seeking an injunction and did not move for an injunction prior to the hearing. During the hearing, the motion for partial summary judgment was denied. Thereafter, the plaintiffs moved for injunctive relief by arguing that duPont was making improvements to reduce emissions which might produce lower results if testing was delayed. They argued that "this Court has the authority through injunctive powers

---

**1.** The Lubeck Public Service District is a local water district. In their briefs filed with this Court, the parties relate that the case against Lubeck has settled.

**2.** West Virginia Rule of Civil Procedure 23(a) states:

(a) *Prerequisites to a class action.*—One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all

members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**3.** A detectable level of C–8 is .01 ppb while a quantifiable level is .05 ppb.

to order this testing whether there is an issue on whether the *Bower* elements [4] have been met or not and do it as injunctive relief." The plaintiffs asked the circuit court to require duPont to make blood testing "available to everybody in the class exposed." [5]

Judge Hill ultimately accepted the plaintiffs' argument and ordered the requested blood testing but, at the same time, invited duPont to appeal his decision. The judge verbalized his decision in the following manner: "I could order this monitoring, testing to begin, and then you could have an expedited appeal to the Supreme Court of Appeals to see if that judgment was right. That would be the shortcut. We'd get to the testing. I would defer the implementation of that—of it so you could seek the expedited appeal." The judge ruled first that duPont must test the class representatives, but later changed his mind and ruled that duPont must test "all of the folks in the community who have been exposed[.]" The order which memorializes the court's ruling states that implementation of the order is stayed for thirty days "to allow the parties to confer regarding submission to the Court of an agreed order, ... or, in the event the parties fail to reach agreement upon implementation of this Order, to allow DuPont to file an appeal[.]" Thus, the order in case number 31428 is stayed by its own terms pending resolution of this petition.

The issue in case number 31429 is whether Judge Hill should be prohibited from acting further in this case until he refers the motion for disqualification to the Chief Justice of this Court. DuPont insists that a writ is necessary because Judge Hill refuses to comply with the procedures and standards which govern judicial disqualification.[6] The circuit court addressed the disqualification motion during a hearing held on May 29, 2003. During that hearing, the question arose regarding whether people who consume water in the city of Parkersburg are members of the class. Judge Hill resides in Parkersburg. The question arose because duPont's counsel interpreted the court's certification order to mean "that every man, woman and child who consumed any amount at any time of water containing C–8 which came from the Washington Works Plant is a member of the class." Counsel reminded the judge that the order, by definition, makes the judge a member of the class. The judge responded by stating that the order can be amended. Judge Hill insisted that the class need not be recertified, but rather the extent of the class could simply be amended. Ultimately, the court ruled that those who consume water which contains detectable but nonquantifiable amounts of C–8 are not members of the class.

---

4. The plaintiffs refer to the medical monitoring elements which this Court set forth in *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999).

5. The class consists of approximately 50,000 people.

6. Canon 3E(1) of the West Virginia Code of Judicial Conduct discusses judicial disqualification. The Canon reads as follows:

> E. *Disqualification.*—(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> (b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
> (c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
> (d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> (i) is a party to the proceeding, or an officer, director or trustee, of a party;
> (ii) is acting as a lawyer in the proceeding;
> (iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;
> (iv) is to the judge's knowledge likely to be a material witness in the proceeding.

During the ensuing discussion, Judge Hill specifically stated, "I don't need to be in this class, and I don't want to be in this class frankly." The judge subsequently determined that if he has an interest in the outcome of the case, he could waive or release that right and thereby avoid the disqualification motion. Judge Hill reasoned:

And I think there are two reasons why I don't think I'm disqualified. And one is I don't think I have an interest because it's de minimis. And, two, if I waive it, I would not be allowed, I would not under any circumstances be permitted to participate.

I've talked to my children and their spouses, and they're perfectly willing to waive their rights, too.

As far as my wife is concerned, we're—I don't know her attitude, but I know her general attitude. And I don't think she'll sign anything like that.

. . . .

And I don't know yet whether she'll sign. She may sign a waiver, too.

The plaintiffs proceeded to argue that no evidence had been presented which would show "that the Parkersburg water supply has any more than a detectable but nonquantifia-

ble amount of C–8." Therefore, the plaintiffs concluded that Judge Hill was not a member of the class and duPont's motion had no merit. In the end, the judge denied the disqualification motion and stated that he would "proceed with the case unless told to do otherwise by ... the Supreme Court."

In its petition filed in this Court, duPont contends that the circuit court exceeded its jurisdiction by refusing to comply with the procedures which govern disqualification of a circuit judge. Moreover, duPont avers that Judge Hill is disqualified from the case because he and his family members are residents of Parkersburg whose water supply arguably meets the definition of the class certified by the court. In that respect, the judge and his family have economic and non-economic interests in the outcome of the litigation. DuPont contends that the judge exceeded his authority by redefining the class and by attempting to waive his interest in order to retain the case.

The plaintiffs respond that Judge Hill should not be removed from the case because duPont waited to file its motion to disqualify less than seven days before a scheduled hearing took place on May 29, 2003. Therefore, West Virginia Trial Court Rule 17.01 [7]

---

**7.** West Virginia Trial Court Rule 17.01 states in pertinent part:

A judge shall disqualify himself or herself, upon proper motion or sua sponte, in accordance with the provisions of Canon 3(E)(1) of the Code of Judicial Conduct. In any proceeding, any party may file a written motion for disqualification of a judge within thirty (30) days after discovering the ground for disqualification. If a motion for disqualification is not timely filed or in conformance with the requirements of this rule as to form and content, such delay or nonconformance may be a factor in deciding whether the motion should be granted. The motion shall be addressed to the judge whose disqualification is sought and shall state the facts and reasons for disqualification, including the specific provision of Canon 3(E)(1) of the Code of Judicial Conduct asserted to be applicable, and shall be accompanied by a verified certificate of counsel of record or unrepresented party that he or she has read the motion; that to the best of his or her knowledge, information, and belief formed after reasonable inquiry that it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law; that there is evidence sufficient to support disqualification;

and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The motion shall be filed with the circuit clerk at least twenty-one (21) days in advance of any trial date set in the case or at least seven (7) days in advance of any date set for a non-trial proceeding in the case. At the time of filing, the moving counsel or unrepresented party shall submit directly to the judge a copy of the motion, and shall serve a copy of the motion upon counsel of record or unrepresented party.

. . . .

(c) [I]f the original judge does not agree to recuse himself or herself, ... then the judge shall:

(1) Proceed no further in the matter; and

(2) Transmit forthwith to the Chief Justice a copy of the motion and certificate, a letter stating his or her response to the motion and reasons therefor, and a completed assigned judge request form provided by the Administrative Office, asking that the Chief Justice rule on the motion or, if the information is insufficient, direct that a hearing be held on the matters relating to the disqualification motion. The letter shall include such matters or consid-

expressly conferred jurisdiction on the circuit court to consider and resolve the motion in accordance with the procedure followed by the court during the hearing. Furthermore, the plaintiffs contend that neither the judge nor his family members belong in the class which has been certified by the court because their public drinking water system is not contaminated with C–8. But, even if the judge and his family share an interest with the plaintiff class members, the plaintiffs contend that duPont failed to offer any evidence which would show that the alleged interest is more than de minimis. As a result, under Canon 3E(1) of the Code of Judicial Conduct, Judge Hill is not disqualified. Besides, even if the judge's interest is more than de minimis, no problem exists because any possibility of a potential conflict has been fully waived.

On June 25, 2003, this Court issued a rule to show cause directing the plaintiffs to show why a writ should not be awarded against Judge Hill. It was determined at that time that if the circuit court forwarded the motion for disqualification pursuant to Rule 17.01, the Chief Justice would rule on the motion. We will discuss the propriety of the injunction and the disqualification of the judge in turn.

## II.

## STANDARD FOR GRANTING A WRIT OF PROHIBITION

■ DuPont does not contend that the circuit court has no jurisdiction in this case, but rather that the circuit court exceeded its legitimate authority. The standard for issuing a writ of prohibition reads as follows:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2)

whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

## III.

## DISCUSSION

### A. The Injunction

■ The motion for partial summary judgment which the plaintiffs filed against duPont requested only that duPont be responsible for providing medical monitoring to members of the class. There is no question that the only relief sought by the plaintiffs was medical monitoring. However, during the April 18, 2003 hearing, when it became clear that the judge was going to deny summary relief, plaintiff's counsel for the first time proposed, ore tenus and without any notice to duPont, "If your Honor is concerned about the standard for summary judgment, we submit that it would be appropriate for injunctive relief." Ultimately, the court granted the injunction and ordered duPont to begin testing for the presence of C–8 in the bloodstream of each member of the class who wished to undergo such testing. The court's order which was filed on May 1, 2003 states:

Upon careful consideration of the filings, pleadings, and argument of the parties in the context of applicable West Virginia medical monitoring law as set forth in

erations as the judge may deem relevant. The letter shall be made part of the record and be filed in the office of the circuit clerk with

copies to counsel of record and any unrepresented party.

*Bower* and the applicable standards for summary judgment under Rule 56 of the West Virginia Rules of Civil Procedure, the court **CONCLUDES** that there is a material question of fact in dispute with respect to the issue of whether the Class has been significantly exposed to C–8 sufficient to prove Plaintiffs' medical monitoring claims, thereby precluding summary judgment in Plaintiffs' favor on that issue.

Upon further consideration and balancing of all of the circumstances of this case, including the nature of the controversy, the object for which an injunction is being sought, and the comparative hardship or inconvenience to the respective parties involved, according to the standards for granting injunctive relief referenced by the West Virginia Supreme Court of Appeals in *Camden–Clark* and under Rule 65 of the West Virginia Rules of Civil Procedure, the Court further **CONCLUDES** that injunctive relief is appropriate to require DuPont to make available and pay for the C–8 blood testing that DuPont insists is essential to prove a material issue of fact in dispute on Plaintiffs' medical monitoring claims.

DuPont argues that in this instance, the judge exceeded his legitimate jurisdiction by ordering injunctive relief.

 Our standard for reviewing the correctness of preliminary injunctions reads as follows:

" 'In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's under-

lying factual findings under a clearly erroneous standard, and we review questions of law *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996).

Syllabus Point 1, *Camden–Clark Memorial Hosp. Corp. v. Turner*, 212 W.Va. 752, 575 S.E.2d 362 (2002). Rule 65 of the West Virginia Rules of Civil Procedure sets forth the procedure circuit courts must follow when granting injunctions. Of particular importance to this case is Rule 65(a)(1) which unequivocally states, "No preliminary injunction shall be issued without notice to the adverse party."

The circuit court does not mention the notice requirement in any context. After the plaintiffs moved for injunctive relief during the hearing, discussion followed regarding whether the medical monitoring elements had been met. Once it was determined that the elements were not satisfied, the court immediately granted injunctive relief with no discussion whatsoever regarding notice. The court likewise omits discussion of the notice requirement in its May 1, 2003 order. Instead, in its order, the court applies the *Camden–Clark* balancing test[8] and concludes that injunctive relief is appropriate.

In their response filed in this Court, the plaintiffs assert that notice was properly given to duPont because they included "claims for various forms of equitable and injunctive relief" in their initial complaint. They admit that the motion seeking injunctive relief was made ore tenus during the summary judgment hearing. Nonetheless, they advance the premise that the circuit court did not err by granting the injunction because they sought relief "to prevent the imminent loss of the very same C–8 blood evidence that DuPont insisted was necessary to resolve this key fact issue[ ]" and because duPont did not

---

8. The circuit court refers to the balancing test set forth in Syllabus Point 2 of *Camden–Clark Memorial Hosp. Corp. v. Turner*, 212 W.Va. 752, 575 S.E.2d 362 (2002), which reads as follows:

"The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case;

regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ." Syl. pt. 4, *State ex rel. Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932).

object. We believe these rationalizations are inadequate attempts to sidestep the plain requirements of the rule.

 The rule makes it very clear that notice is mandatory. This is more fully explained by the authors of the handbook on West Virginia Civil Procedure:

> It is a prerequisite under Rule 65(a)(1) that the opposing party receive notice of a request for a preliminary injunction. A preliminary injunction ordered without notice to the opposing party is void. It has been held that "[t]he notice required by Rule 65(a)(1) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition. Moreover, the party requesting a preliminary injunction is entitled to a fair opportunity to present evidence on the issue."

Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure 1021–22 (2002). That clearly did not happen in this case. Because duPont was not notified that the plaintiffs would seek an injunction during the hearing, duPont was not "given a fair opportunity to oppose the application and to prepare for such opposition." Consequently, the rule requires us to declare that the injunction which was ordered without proper notice to duPont is void.

Thus, we hold that pursuant to West Virginia Rule of Civil Procedure 65(a)(1), no preliminary injunction shall issue without notice to the adverse party. A preliminary injunction which is ordered without notice to the adverse party is void. Notice necessarily implies that the opposing party be provided a fair opportunity to oppose the application and to prepare for such opposition.

This Court previously said that "[a] writ of prohibition will lie to prohibit the enforcement of an injunction where the trial court did not have jurisdiction or exceeded its proper jurisdiction." *State ex rel. United Mine Workers v. Waters*, 200 W.Va. 289, 300, 489 S.E.2d 266, 277 (1997). Since the Circuit Court of Wood County exceeded its jurisdiction in this case, a writ of prohibition will issue restraining the court from enforcing its order entered on May 1, 2003, directing du-Pont to provide blood testing for all members of the class who voluntarily submit to such testing.

 Actually, this case is governed by *Carter v. Monsanto Co.*, 212 W.Va. 732, 575 S.E.2d 342 (2002), inasmuch as the fundamental issue in this case is really the same issue already decided in the *Monsanto* case. In *Monsanto*, a landowner, Robert Carter, on behalf of himself and a class of similarly situated plaintiffs, brought a civil action against Monsanto and the owners of two landfills asking that the defendants pay to determine if, and how much, of the contaminant dioxin was present on their property. The plaintiffs sought to shift the costs of testing for the contaminant to the defendants claiming that the testing was prohibitively expensive. Monsanto and the landfill owners countered by arguing that the plaintiffs were "seeking expense money to conduct testing to determine if [their] property ha[d] been damaged by exposure to dioxin; in essence, [the plaintiffs were] asking that the burden of the expense of gathering evidence, testing and sampling, be shifted to Monsanto and the landfill owners." *Id.*, 212 W.Va. at 736, 575 S.E.2d at 346. In *Monsanto*, this Court agreed with the defendants that the burden was the plaintiffs to "first prove at [their] expense that [their] property ha[d] in fact been injured." *Id.*

The same is true in the case *sub judice*. The only difference here is that rather than seeking expense money to determine if their property has been exposed to a contaminant, the plaintiffs are seeking expense money to determine if they themselves have suffered harm which is attributable to the presence of C–8 in their bloodstreams. They do not know to what extent they may have been exposed to C–8, and there is no evidence in the record before this Court that C–8 is harmful to humans. Like the plaintiffs in *Monsanto*, they are seeking expense money. By so doing, they are asking that the burden of the expense of gathering evidence, testing for the presence of C–8, be shifted to duPont. In a creative manner, the plaintiffs are simply asking the circuit court to shift the costs

of the discovery process and to compel du-Pont to pay for their discovery. This we cannot do for the same logic and principles set forth in *Monsanto.*

The plaintiffs must bear the cost of proving, at their own expense, that they have been exposed to C–8 and that exposure has injured them. However, we note that it was asserted during oral argument before this Court that few laboratories in the country perform this particular type of testing. In fact, it may be that duPont has the only laboratory in the country in which C–8 blood testing is routinely performed. If that is the case, then duPont must cooperate with any of the plaintiffs who elect to be tested and who request testing at that particular duPont laboratory. The plaintiffs must bear the reasonable cost of the testing, but we emphasize that the testing must be offered at a fair and reasonable price.

### B. Disqualification

In its motion to disqualify, duPont alleged that Judge Hill violated Canon 3 in two ways: Canon 3E(1)(c) was violated because the judge and his family had an economic interest in the subject matter in controversy which could be more than de minimis and Canon 3E(1)(d)(i) was violated because the judge, his wife, and other family members were members of the class envisioned by plaintiffs' counsel. DuPont contends that the motion to disqualify was filed eight days in advance of a discovery hearing which was scheduled for May 29, 2003. During that hearing, the judge proceeded first to address the disqualification motion. Following a discussion on the definition of "non-trial proceeding" and timeliness, Judge Hill determined that Canon 3 was dispositive of the motion and Trial Court Rule 17.01 was moot.

Prior to making that determination, a lengthy colloquy ensued regarding the definition of "non-trial proceeding." Judge Hill quickly stated that he believed that "the motions that have been filed are proceedings" within the meaning of the rule. He went on to state, "And if the judge does not agree to recuse himself or herself, the judge shall within seven days or prior to a non-trial hearing, allow the moving party to make a record on the disqualification issue, and shall

then move forthwith on the motion for disqualification." If the judge denies the motion, "he or she shall proceed with the case, and that would be the end of that in this court." However, "[i]f the judge grants the motion, he or she should proceed no further." DuPont's attorney argued that the discovery motions pending before the court did not qualify as "non-trial proceedings," and, therefore, the disqualification motion should be considered regardless of when it was filed. The attorney clarified his argument by stating that, as he read the rule, only matters which dispose of "issues of fact or law" qualify as "non-trial proceedings," and the twenty-one and seven day provisions are included "to prevent last ditch, last minute challenges to the judge which would interfere with or delay a trial or other dispositive issues."

DuPont's counsel proceeded to explain his interpretation of the procedure for disqualification that is included in Rule 17.01. Counsel stated that he believed the judge had two options:

> you would either grant the motion, in which case that would trigger a cascade of things, including conferences with the attorneys and whatnot … to pick a new judge. Or you would deny the motion on the record. And then you would proceed to send the matter on to the Chief Justice.

The judge asked, "Isn't Rule 17.01 really moot? Doesn't Canon 3 dispose of the matter? Doesn't Canon 3 nevertheless, whether it's timely or not, require a judge under the Canons of Ethics, of Judicial Ethics, to disqualify himself?" DuPont's counsel agreed, and the judge subsequently reasoned that regardless of whether a motion is filed timely or not, if a judge has an interest in the matter, Canon 3 requires that he "voluntarily disqualify himself."

In the end, the circuit court ruled that "[i]t doesn't make any difference when you file the motion." The timeliness issue, the court declared, is "the hair of the dog" and other issues which the court considered "more substantive" needed to be addressed. The discussion immediately switched to whether residents of the City of Parkersburg should be included in the class. At that time, the judge expressed "shock[ ] and surprise[ ] by [du-

Pont's disqualification] motion" because he stated that he "had no idea that the people in Parkersburg were affected."

After much discussion regarding whether the class previously had been defined as "anybody that consumed any amount of water from a public water district which contained any amount of C–8[,]" the judge determined that he would amend the class to include only those who consumed water with a quantifiable amount of C–8. He next decided that he had no interest in the outcome of the case because he lived in Parkersburg and Parkersburg's water supply contains only detectable levels of C–8. After further discussion, the judge found that his interest in the outcome of the litigation is de minimis and that he could and did waive any interest which he might have. He, therefore, denied duPont's motion to disqualify him.

West Virginia Trial Court Rule 17, titled "Disqualification and Temporary Assignment of Judges," governs the disqualification of circuit judges. Even though Judge Hill finally resolved the timeliness issue in this case by deciding that the rule did not apply, we take this opportunity to voice our concern that the rule is written in a manner which arguably leaves it open to interpretation. We believe that reasonable people with good judgment could easily disagree upon which motions qualify as "non-trial proceedings" which activate the time requirements contained in the rule. In an effort to clear up any misunderstanding generated by the rule, we are rewriting Rule 17. The revised rule will be released contemporaneously with this opinion or soon thereafter. In the future, questions of this nature which arise will hopefully be resolved in accordance with the revised rule.

With that said, we must now deal with the disqualification motion which was filed in the case *sub judice*. Rule 17.01(c) explains the procedure which must be followed when a party files a motion to disqualify the original judge assigned to a case and the judge does not agree to recuse himself or herself. The rule states that the judge must "[p]roceed no further in the matter" and transmit to the Chief Justice "a copy of the motion and

certificate" along with accompanying documents.

In compliance with the Trial Court Rules, and until the Chief Justice makes a determination on the issue of disqualification, Judge Hill is prohibited from further participating in the case below. Judge Hill must forward the motion for disqualification to the Chief Justice of this Court pursuant to the instructions contained in Rule 17.01(c)(2). Once the Chief Justice receives the motion with accompanying documentation, the Chief Justice will determine whether the evidence is sufficient to disqualify the judge. The Chief Justice will issue an order accordingly.

No. 31428—Writ granted.

No. 31429—Writ granted as moulded.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting.

(Filed Dec. 9, 2003)

The majority notes that "this case is governed by *Carter v. Monsanto Co.*, 212 W.Va. 732, 575 S.E.2d 342 (2002)," another case in which I disagreed with the majority. I depart from the majority for similar reasons today. The *Carter* dissent states in part:

> I believe that this case stands for a simple proposition, and one that we should not lose sight of. On the one hand we have a large corporation that operated a toxic waste dump and allegedly allowed odorless, tasteless, colorless, unsafe substances to escape and potentially contaminate the property of its neighbors. On the other hand we have local property owners who want to know if it is alright for their kids to play in the yard or safe to grow a few tomatoes in the summer. It seems obvious to me that once a plaintiff has established that a defendant has exposed its neighbors to a substantial risk of contamination, the company should have to pay to determine if the neighbors' land is safe.

*Id.*, 212 W.Va. at 739–40, 575 S.E.2d at 349–50 (McGraw, J., concurring in part and dissenting in part). In this case, plaintiffs aver that the pollution is not on their land, but is actually in their bloodstream, a much more

frightening prospect. They also claim, as the majority notes, that the defendant possesses one of the few, if not the only, labs in the country capable of determining whether or not C8 is coursing through the veins of the citizens of Wood County.

The majority discusses the "balancing test" a judge must use when issuing an injunction:

> The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ. Syl. pt. 4, *State ex rel. Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932).

Syl. pt. 2, *Camden–Clark Memorial Hosp. Corp. v. Turner*, 212 W.Va. 752, 575 S.E.2d 362 (2002). I believe that Judge Hill exercised "sound judicial discretion" when he granted the injunction. As Justice Starcher noted in his concurrence to *Carter*:

> [I]n the context of a preliminary injunction request, under the "balancing of the harms" test, one can imagine a scenario where a court might be justified in preliminarily requiring some form of monitoring by a nuisance defendant before final judgment on liability—such as where a strong preliminary showing of a highly unreasonable risk to others was made. Of course, if a plaintiff in such a case did not ultimately prevail, they would have to reimburse the defendant for the cost of the monitoring.

*Carter v. Monsanto Co.*, 212 W.Va. 732, 739, 575 S.E.2d 342, 349 (2002) (Starcher, J., concurring). I believe this case presents just such a scenario, and that the lower court was justified in requiring the defendant to provide the blood testing. Therefore, I must respectfully dissent.