707 S.E.2d 831

STATE of West Virginia, Petitioner
Below, Appellee

v.

Rodney Jason BERRY, Defendant
Below, Appellant.

No. 35501.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 2011.

Decided Jan. 20, 2011.

Crystal L. Walden, Deputy Public Defender, Charleston, WV, for Appellant.

Kristen Keller, Raleigh County Prosecutor, Beckley, WV, for Appellee.

DAVIS, Justice:

Rodney Jason Berry, appellant herein and defendant below, appeals from an order of the Circuit Court of Raleigh County convicting him of two counts of first-degree murder and two counts of use of a firearm, and sentencing him to two consecutive life sentences without the possibility of parole. In this appeal, Mr. Berry has assigned error as follows: (1) failure of the trial judge to disqualify himself; (2) improper preclusion of mitigating evidence; (3) insufficiency of the evidence; (4) erroneous admission of numerous photos; and (5) prosecutorial misconduct. After a careful review of the briefs, the record submitted on appeal, and listening to the arguments of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In October 2000, Mr. Berry met Martha Mills over the internet. Mr. Berry and Ms. Mills developed an unstable relationship that ended in July 2006.[1] At some point, Ms. Mills began a relationship with Zachary Worthington.[2]

During the late evening hours of December 2, 2006, Mr. Berry drove to the home of Ms. Mills.[3] Ms. Mills initially was not at home, so Mr. Berry left but later returned. According to the testimony of a thirteen-year-old eyewitness, A.C.,[4] after Mr. Berry returned to Ms. Mills' apartment and found that she still was not home, he paced back and forth in front of the apartment for about five minutes.[5] Eventually, Ms. Mills arrived in her vehicle and pulled into her driveway. Mr. Worthington was in the vehicle with Ms. Mills.

According to the testimony of A.C., immediately after Ms. Mills pulled into the driveway, Mr. Berry pulled out a handgun and began shooting at Mr. Worthington as he sat in the vehicle. A.C. stated further that Ms. Mills "jumped out of the car, I guess to try and stop him, and he shot her, and he reached back in the vehicle and shot the guy three more times and jumped in his vehicle and left." Both victims were killed as a result of over a dozen gun shot wounds.

After killing Ms. Mills and Mr. Worthington, Mr. Berry drove to his home, where he lived with his mother. Mr. Berry informed his mother that he had shot the two victims. Afterwards, Mr. Berry called 911 emergency and reported that he had shot the victims.

On January 7, 2007, Mr. Berry was indicted on two counts of first-degree murder and two counts of use of a firearm. The trial of the case commenced on May 12, 2009. During the trial, the State called fourteen witnesses. Mr. Berry testified during the trial and admitted to killing the victims.[6] The jury returned a verdict on May 22, 2009, finding Mr. Berry guilty of all four counts of the indictment. Subsequent to the trial court's denial of Mr. Berry's post-trial motions, Mr. Berry filed this appeal.

1. There was conflicting testimony about when the relationship ended.

2. There was evidence that Ms. Mills and Mr. Worthington became engaged.

3. Ms. Mills lived in an apartment in Bradley, West Virginia.

4. We use initials to identify this witness due to the witness' tender age. *Cf. In re Chevie V.,* 226 W.Va. 363, 366 n. 1, 700 S.E.2d 815, 818 n. 1 (2010) ("In keeping with our longstanding prac-

tice of referring to children in cases involving sensitive facts by their last initials rather than by their full names, we will refer to Chevie by her last initial." (citations omitted)).

5. A.C. viewed Mr. Berry from a window in her home across the street from Ms. Mills' apartment.

6. Mr. Berry also called two other witnesses.

## II.

### STANDARD OF REVIEW

This is an appeal by Mr. Berry from the circuit court's ruling denying his post-trial motions for a new trial and judgment of acquittal. As this Court has previously stated:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). In addition to the general standard of review, this Court also will rely upon specific review standards presented for each issue raised.

## III.

### DISCUSSION

On appeal to this Court, Mr. Berry assigns five errors for review: (1) failure of the trial judge to recuse himself; (2) improper preclusion of mitigating evidence; (3) insufficiency of evidence; (4) erroneous admission of numerous photos; (5) prosecutorial misconduct. We will consider each assigned error in turn.

### A. *Disqualification of Trial Judge*

■ The first issue raised by Mr. Berry is that he was denied a fair trial because the trial judge did not disqualify himself from the case. Mr. Berry contends that, because the trial judge previously was married to the prosecuting attorney, Kristen Keller, the tri-al judge should have disqualified himself from the case.

The record reflects that the trial judge and Ms. Keller were married to each other from April 30, 1994, until the entry of a final divorce decree on January 30, 2006.[7] Pursuant to an order of the circuit court, the trial judge did not preside over any criminal cases in Raleigh County during his marriage to Ms. Keller. After the divorce, the trial judge met with the chief public defender and prosecuting attorney of Raleigh County in March 2006, and informed them that he would resume presiding over criminal cases as a result of the divorce. An order was entered April 5, 2006, wherein the trial judge ruled that he would hear criminal cases in Raleigh County that were based upon conduct occurring on or after January 31, 2006.[8]

■ In this proceeding, the defendant admits that he did not file a motion seeking to have the trial judge disqualify himself from the case. *See* W. Va. Tr. Ct. R. 17.01(a) (requiring motion to disqualify trial judge). In fact, the issue of disqualification is being presented for the first time in this appeal. "Because this argument is now being raised for the first time on appeal, we must necessarily find that the argument ... has been waived." *Zaleski v. West Virginia Mut. Ins. Co.*, 224 W.Va. 544, 550, 687 S.E.2d 123, 129 (2009). *See also State ex rel. Pritt v. Vickers*, 214 W.Va. 221, 223 n. 1, 588 S.E.2d 210, 212 n. 1 (2003) ("[T]he matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court. As this issue is not properly before the Court in this proceeding, we will not further address the matter."). Mr. Berry was required to bring any issue of possible bias before the circuit court so that it could evaluate its

---

7. During the period of the marriage, Ms. Keller was an assistant prosecuting attorney for Raleigh County. In January 2009, Ms. Keller was sworn in as the elected Prosecutor of Raleigh County.

8. In November 2006, the defendant in a case styled *State v. Johnson*, No. 06-F-155 (W.Va. Dec. 13, 2006), filed a motion to disqualify the trial judge because of the judge's previous marriage to the prosecutor. The trial judge refused to disqualify himself and referred the matter to the Chief Justice of this Court. The Chief Justice entered an order December 13, 2006, finding that the trial judge was not required to recuse himself from the case. *See State ex rel. E.I. duPont de Nemours & Co. v. Hill*, 214 W.Va. 760, 770, 591 S.E.2d 318, 328 (2003) ("Once the Chief Justice receives the motion with accompanying documentation, the Chief Justice will determine whether the evidence is sufficient to disqualify the judge. The Chief Justice will issue an order accordingly.").

actions to determine the credibility of the allegations and respond to them accordingly.[9] We long have held that "[e]rrors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there." Syl. pt. 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Accordingly, we decline to address the disqualification issue.[10]

### B. Preclusion of Mitigating Evidence

■ Mr. Berry contends that the trial court precluded him from presenting evidence on the issue of mercy during his unitary trial.[11] In reviewing a challenge to a trial court's admission of evidence, we have held that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983). *Accord* Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

Mr. Berry initially filed a motion to bifurcate the issue of guilt and mercy; but he subsequently withdrew his motion. After withdrawing his motion to bifurcate, Mr. Berry disclosed evidence to the State that was intended to show that Mr. Berry suffered from "social anxiety" issues. Mr. Berry wanted to use this evidence to suggest that he did not form the requisite intent to commit first-degree murder. The State objected to the use of the evidence because it was not timely disclosed and because the evidence supported a diminished capacity defense.[12] The State argued that expert testi-

9. Mr. Berry's brief states that he did not personally know, until after he was sentenced, that the trial judge previously was married to the prosecutor. Mr. Berry's trial counsel was appointed from the public defender office of Raleigh County. By contrast, the attorney for Mr. Berry in this appeal is from the Kanawha County public defender office. Insofar as the public defender's office representing Mr. Berry during his trial knew of the previous marriage and the trial judge's decision to resume hearing criminal cases, we must assume that trial counsel was aware of this situation and therefore did not file a motion seeking to disqualify the trial judge. To the extent that trial counsel did not inform Mr. Berry of the previous marriage of the trial judge and prosecuting attorney, that is an issue that may be addressed in a habeas proceeding.

10. Assuming, for the sake of argument, that the issue was not waived, we find no merit to the issue. As previously mentioned, the issue of the trial judge hearing criminal cases after his divorce from the prosecutor was addressed by the Chief Justice in the case of *State v. Johnson*, No. 06–F–155 (W.Va. Dec. 13, 2006). The unsupported factual allegations made in Mr. Berry's brief were fully reviewed in *Johnson* and rejected.

11. In conjunction with this issue, Mr. Berry contends that the trial court precluded him from presenting any evidence of his relationship with Ms. Mills prior to sixty days before the murders occurred. The State correctly points out that Mr. Berry has misrepresented the record.

The record indicates that the trial court posed a hypothetical question of what harm would occur if it limited Mr. Berry from presenting evidence of his relationship with Ms. Mills prior to sixty days before the murders occurred. After listening to Mr. Berry's argument on the issue, the trial court ruled that no time limit would be placed. Specifically, the court ruled:

> THE COURT: All right. I can—let's not—let's not fix a date then, but let's fix the principle, that . . . the Court intends not to go so far back in time as to enter into an irrelevant period, and "irrelevant" means something that would not reasonably be expected to have an effect on the Defendant's state of mind at the time of the—of the events alleged.

In view of the record, we reject Mr. Berry's contention that the trial court prevented him from presenting any evidence of his relationship with Ms. Mills prior to sixty days before the murders occurred.

12. This Court has explained the diminished capacity defense as follows:

> The diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged. This defense is asserted ordinarily when the offense charged is a crime for which there is a lesser included offense. This is so because the successful use of this defense renders the defendant not guilty of the particular crime charged, but does not preclude a conviction for a lesser included offense.

Syl. pt. 3, *State v. Joseph*, 214 W.Va. 525, 590 S.E.2d 718 (2003).

mony was required to support such a defense and that Mr. Berry did not intend to use an expert.[13]

The trial court agreed with the State that Mr. Berry could not use the social anxiety evidence for guilt-phase issues. However, Mr. Berry argued further that the evidence also was going to be used as mitigating evidence on the issue of mercy. The trial court informed Mr. Berry that he could not use social anxiety evidence in a unitary trial.[14] Consequently, the trial court asked Mr. Berry if he wanted to renew his motion for a bifurcated trial so that he could introduce the social anxiety evidence during a mercy proceeding. Mr. Berry declined to renew his motion to bifurcate when the offer initially was made.[15]

In this appeal, Mr. Berry contends that he had a right to introduce the social anxiety evidence during a unitary trial as mitigating evidence solely on the issue mercy. We disagree.

This Court has held that "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." Syl. pt. 4, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). In considering whether bifurcation is appropriate in a case, we held in *LaRock* that,

[A]lthough it virtually is impossible to outline all factors that should be considered by the trial court, the court should consider when a motion for bifurcation is made: (a) whether limiting instructions to the jury would be effective; (b) whether a party desires to introduce evidence solely for sentencing purposes but not on the merits; (c) whether evidence would be admissible on sentencing but would not be admissible on the merits or vice versa; (d) whether either party can demonstrate unfair prejudice or disadvantage by bifurcation; (e) whether a unitary trial would cause the parties to forego introducing relevant evidence for sentencing purposes; and (f) whether bifurcation unreasonably would lengthen the trial.

Syl. pt. 6, *LaRock, id.* "It is clear that the *LaRock* factors are concerned with a party being able to present evidence for sentencing that may not be admissible on the merits of a prosecution." *State ex rel. Dunlap v. McBride*, 225 W.Va. 192, 201, 691 S.E.2d 183, 192 (2010).

In the instant case, Mr. Berry sought to introduce evidence on the issue of mercy, when such evidence was ruled inadmissible as to the issue of guilt. This situation falls precisely under *LaRock. LaRock* recognized that situations could arise where evidence would be inadmissible on the issue of guilt, but admissible on the issue of mercy.[16] When such a situation arises, bifurcation should be used.[17]

---

13. The social anxiety evidence included school records showing that Mr. Berry did not do well in a group setting, that he was immature for his age, and that his father was diagnosed with post-traumatic stress disorder.

14. The trial court's ruling allowed Mr. Berry to present any mitigating evidence that did not involve the diminished capacity defense.

15. It was not until the middle of the trial that Mr. Berry made two oral motions to bifurcate. The State opposed the motions as untimely and prejudicial. The trial court agreed with the State that Mr. Berry waited too late to renew the motion. However, the trial court stated that if Mr. Berry wanted to introduce any evidence for mitigation purposes, which might be inadmissible for other purposes, he could approach the court on the matter and seek a limiting instruction for the jury on how such evidence was to be received. Mr. Berry did not take advantage of this offer by the trial court. In this appeal, Mr. Berry has not alleged that it was error for the trial court to deny the mid-trial motions for bifurcation.

16. This Court recently has recognized that "the type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence." *State v. McLaughlin*, 226 W.Va. 229, 240, 700 S.E.2d 289, 300 (2010).

17. Mr. Berry has cited to the decision in *State ex rel. Leach v. Hamilton*, 280 S.E.2d 62 (W.Va. 1980), to argue that all mitigating evidence is admissible during a unitary trial. Mr. Berry's reliance on *Leach* is misplaced. In *Leach*, the Court was asked to decide whether the requirement of a unitary trial was unconstitutional. It was held in *Leach* that "permitting a unitary trial procedure rather than a bifurcated one wherein a separate hearing on sentencing would occur, is not unconstitutional." Syl. pt. 1, in part, *Leach, id.* Insofar as *Leach* held that bifurcated murder

At the start of the trial, the court gave Mr. Berry an opportunity to introduce his social anxiety evidence during a separate mercy phase proceeding, as required under *LaRock.* Mr. Berry refused to avail himself of such a proceeding when it was offered. Insofar as Mr. Berry declined to renew his motion for bifurcation when the trial court asked him to do so, he cannot now complain about the exclusion of the evidence. Under these facts, we find Mr. Berry waived his right to present the social anxiety evidence by not timely accepting the trial court's offer to bifurcate.[18]

### C. Insufficiency of Evidence

■ The next issue raised by Mr. Berry is that the evidence was insufficient to prove he committed murder by lying in wait. In Syllabus point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), we set forth our standard of review for cases making a challenge to the sufficiency of the evidence. This standard is as follows:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *Guthrie, id.*

The State indicted Mr. Berry on two alternative theories of first-degree murder; premeditated murder and lying in wait murder. *See* Syl. pt. 6, *State v. Sims,* 162 W.Va. 212, 248 S.E.2d 834 (1978) ("W. Va.Code, 61–2–1, enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any willful, deliberate and premeditated killing; (3) in the commission of, or attempt to commit, arson, rape, robbery or burglary."). The jury was instructed on both theories, however, the verdict form did not allow the jury to state which theory it found had been proven.[19] In this proceeding, Mr. Berry concedes that the evidence was sufficient to prove premeditated murder. However, Mr. Berry argues that the evidence was insufficient to prove murder by lying in wait. Moreover, Mr. Berry contends that, because the verdict form did not show which theory the jury relied upon, the murder convictions must be reversed.

To support his argument, Mr. Berry contends that, under the decisions in *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled in part by Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), a conviction must be reversed when evidence is insufficient as to one theory of murder and the verdict form fails to show which theory was relied upon by the jury. Neither case stands for such a proposition.

In *Yates,* the Supreme Court held that, when a defendant is charged with both a crime that is time-barred and a valid crime, and a jury returns a guilty verdict without indicating which crime was proven, the conviction should be reversed. In *Stromberg,* the Supreme Court held that, when a defendant is charged with both a crime that is unconstitutional and a valid crime, and a jury returns a guilty verdict without indicating which crime was proven, the conviction should be reversed. The question of sufficiency of the evidence on either charge was

---

trials could not be held, it made clear that all mitigating evidence should be allowed during a unitary trial. However, sixteen years after the decision in *Leach* was handed down, this Court issued the *LaRock* opinion. *LaRock* accorded defendants a right that *Leach* would not, *i.e.,* *LaRock* authorized the use of bifurcated murder trials. In the final analysis, it is the *LaRock* opinion, and not *Leach,* that controls the issue of admissible and inadmissible mitigating evidence at a murder trial.

**18.** Of course, had Mr. Berry timely disclosed the social anxiety evidence and been prepared to use a qualified expert, the evidence presumptively could have been admitted during a unitary proceeding.

**19.** Mr. Berry has not assigned as error the failure to have the verdict form distinguish the two theories of murder.

not an issue in either *Yates* or *Stromberg*. This point was expressly addressed by the Supreme Court in *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

In *Griffin,* the defendant was charged with a single count of conspiracy for unlawfully hindering the Internal Revenue Service and the Drug Enforcement Agency in their official duties. At trial, the Government failed to produce any evidence to prove interference with the Drug Enforcement Agency,[20] but the theory was submitted to the jury along with the claim involving the Internal Revenue Service. The jury returned a general guilty verdict against the defendant. The conviction was upheld by the United States Court of Appeals for the Seventh Circuit. In the proceeding before the United States Supreme Court, the defendant argued that, under *Yates* and *Stromberg,* the conviction had to be reversed because of the insufficiency of the evidence on the conspiracy theory against the Drug Enforcement Agency. The opinion in *Griffin* rejected this argument as follows:

It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action.

. . . .

This common-law rule applied in a variety of contexts. It validated general verdicts returned on multicount indictments where some of the counts were legally defective ("bad"), and general verdicts returned on multicount indictments where some of the counts were unsupported by the evidence. It also applied to the analogous situation at issue here: a general jury verdict under a single count charging the commission of an offense by two or more means.

. . . .

Our continued adherence to the holding of *Yates* is not at issue in this case. What petitioner seeks is an extension of its holding—an expansion of its expansion of *Stromberg*—to a context in which we have never applied it before. Petitioner cites no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in *Stromberg,* nor even illegal as in *Yates,* but merely unsupported by sufficient evidence. If such invalidation on evidentiary grounds were appropriate, it is hard to see how it could be limited to those alternative bases of conviction that constitute separate legal grounds; surely the underlying principle would apply equally, for example, to an indictment charging murder by shooting or drowning, where the evidence of drowning proves inadequate. But petitioner's requested extension is not merely unprecedented and extreme; it also contradicts another case, postdating *Yates,* that in our view must govern here.

*Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), involved a claim that the evidence was insufficient to support a general guilty verdict under a one-count indictment charging the defendant with knowingly purchasing, possessing, dispensing, and distributing heroin not in or from the original stamped package.... We held that the conviction would have to be sustained if there was sufficient evidence of distribution alone. We set forth as the prevailing rule: "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.,* at 420, 90 S.Ct. at 654.

*Griffin,* 502 U.S. at 49–57, 112 S.Ct. at 466–73, 116 L.Ed.2d 371 (internal citations omitted).

Under the decision in *Griffin,* when a defendant is convicted of a crime that is prosecuted under two liability theories, and a jury

---

**20.** It appears that the witness who would have provided the evidence on this issue failed to appear at trial.

returns a general verdict of guilty, the conviction is valid even though the evidence was insufficient as to one of the liability theories. Most courts addressing this issue have reached the same conclusion. *See Terry v. State,* 371 Ark. 50, 263 S.W.3d 528, 533 (2007) (holding that where the jury was instructed on charges of capital murder under two theories and rendered a general verdict of guilty on capital murder, the verdict could be affirmed if there was sufficient evidence supporting a conviction under either theory); *People v. Silva,* 25 Cal.4th 345, 106 Cal. Rptr.2d 93, 114, 21 P.3d 769 (2001) ("[A]ssuming ... that the evidence was insufficient to support the felony-murder theory, we conclude that defendant was not prejudiced because ... [t]he evidence here is more than adequate to support the verdict of first degree murder in the killing of [the victim] on the theory of premeditation and deliberation."); *People v. Dunaway,* 88 P.3d 619, 631 (Colo.2004) (upholding conviction where only one alternative theory of liability for a child abuse charge was supported by the evidence beyond a reasonable doubt); *White v. United States,* 714 A.2d 115, 118 n. 5 (D.C.1998) (holding that, since the jury returned a general verdict of guilty on the charge of carrying a concealed weapon, the conviction may be affirmed if the evidence was sufficient to support either theory of liability-actual possession or constructive possession); *San Martin v. State,* 717 So.2d 462, 469 (Fla.1998) (holding that murder conviction was valid even though evidence was insufficient on theory of premeditated murder, because evidence was sufficient for felony murder theory); *Commonwealth v. Candelario,* 446 Mass. 847, 848 N.E.2d 769, 778 (2006) (holding that the issue of the sufficiency of evidence to support a theory of murder with extreme atrocity or cruelty was moot where there was no dispute that evidence was sufficient to support the alternative theory of deliberate, premeditated murder); *People v. Ponnapula,* 229 A.D.2d 257, 655 N.Y.S.2d 750, 760 (1997) ("[W]hen disjunctive theories of criminality are submitted to the jury and a general verdict of guilt is rendered, a challenge based on evidentiary insufficiency will be rejected as long as there was sufficient evidence to support any of the theories submitted."); *Sanchez v. State,* No. PD–0961–07, 2010 WL 3894640, at *9 (Tex.Crim.App. Oct. 6, 2010) ("When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense ..., [i]f the evidence is sufficient to support a finding of guilt based on at least one of the alternative theories, the verdict stands."); *State v. Hecht,* 116 Wis.2d 605, 342 N.W.2d 721, 729 (1984) (holding that conviction will stand even though evidence may be insufficient on one of several liability theories for committing a crime).

■ This Court previously never has addressed a claim of insufficiency of evidence as to one of two alternative murder theories. However, in the context of felony murder and premeditated murder charges, this Court has held that a verdict form does not have to distinguish between the two theories of murder, so long as the State does not intend to seek a conviction for the underlying felony murder theory. *See State v. Hughes,* 225 W.Va. 218, 226, 691 S.E.2d 813, 821 (2010) ("[T]he verdict form in the instant case did not make a distinction between felony murder and premeditated murder because the State did not seek a conviction for the underlying burglary felony."); Syl. pt. 5, *Stuckey v. Trent,* 202 W.Va. 498, 505 S.E.2d 417 (1998) ("In West Virginia, (1) murder by any willful, deliberate and premeditated killing, and (2) felony-murder constitute alternative means ... of committing the statutory offense of murder of the first degree; consequently, the State's reliance upon both theories at a trial for murder of the first degree does not, *per se,* offend the principles of due process, provided that the two theories are distinguished for the jury through court instructions; nor does the absence of a jury verdict form distinguishing the two theories violate due process, where the State does not proceed against the defendant upon the underlying felony."). Implicit in this Court's recognition that a verdict form does not have to distinguish between felony murder and premeditated murder, with one exception as noted above, is an acknowledgment of the common law rule that a verdict will stand when evidence is sufficient as to only one of two or more theories of liability for a single offense.

Thus, we now make clear and hold that, when a defendant is prosecuted on alternative theories of first-degree murder, a verdict against the defendant will stand if the evidence is sufficient to establish guilt beyond a reasonable doubt on any of the alternative first degree murder theories.

In the instant case, Mr. Berry concedes that the evidence was sufficient to establish his guilt for the two premeditated first-degree murder theories. Consequently, Mr. Berry's claim that the convictions should be reversed, because the evidence was insufficient on the theory of lying in wait, is without merit.[21]

### D. Admission of Numerous Photographs

 Mr. Berry contends that prejudicial error occurred as a result of the State's introduction of seventy-six crime scene photographs. Mr. Berry has characterized many of the photographs as gruesome. This Court has noted that " '[t]he general rule is that pictures or photographs that are relevant to any issue in a case are admissible.' " *State v. Mongold*, 220 W.Va. 259, 272, 647 S.E.2d 539, 552 (2007) (quoting *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 497, 345 S.E.2d 791, 796 (1986)). In Syllabus point 8 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), this Court held that "[t]he admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." *Derr* further held that

Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syl. pt. 10, *Derr*, 192 W.Va. 165, 451 S.E.2d 731.

Mr. Berry's brief presents several rambling arguments regarding the use of the photographs. The principal argument appears to be that the State should not have been allowed to introduce duplicative photographs of the victims as they appeared before and after their wounds had been cleaned. Mr. Berry contends the State should only have been allowed to use the photographs of the victims after their wounds had been cleaned, in order for the jury to not see blood.

During a pretrial hearing on a motion to suppress hearing, the trial court undertook a *Derr* analysis of the photographs and ruled that, "from what I've seen thus far, I do not find that these photographs—that there's a prejudicial effect or danger thereof that sub-

---

21. We wish to make clear that, in our review of the evidence, we find that it was sufficient to establish both murder theories. The State presented testimony by the eye witness to the murders, A.C. which showed that immediately after Ms. Mills drove into the driveway, Mr. Berry began shooting. Testimony was presented by the apartment manager and a law enforcement officer that Mr. Berry would not have been visible to Ms. Mills until she pulled into the driveway. Mr. Berry testified that Ms. Mills did not know he was coming to her apartment and that he wanted to "surprise her." Although Mr. Berry argues that lying in wait murder can only be proven by evidence of hiding in concealment, our cases have held differently. This Court has held that:

> "Lying in wait" as a legal concept has both mental and physical elements. The mental element is the purpose or intent to kill or inflict bodily harm upon someone; the physi-

cal elements consist of waiting, watching and secrecy or concealment. In order to sustain a conviction for first degree murder by lying in wait pursuant to W.Va.Code, 61–2–1 [1987], the prosecution must prove that the accused was waiting and watching with concealment or secrecy for the purpose of or with the intent to kill or inflict bodily harm upon a person.

Syl. pt. 2, *State v. Harper*, 179 W.Va. 24, 365 S.E.2d 69 (1987). Under *Harper*, the theory of lying in wait may be shown by concealment "or" secrecy. *See State v. Leroux*, 326 N.C. 368, 390 S.E.2d 314, 320 (1990) (" 'If one places himself in a position to make a private attack upon his victim and assails him at a time when the victim does not know of the assassin's presence or, if he does know, is not aware of his purpose to kill him, the killing would constitute a murder perpetrated by lying in wait.' " (quoting *State v. Allison*, 298 N.C. 135, 257 S.E.2d 417, 425 (1979))).

 

stantially outweighs the probative value of the photographs that the Court has seen." The trial court also indicated at the hearing that it would address the issue of cumulative use of photographs during the trial, if the issue arose. The record reflects that Mr. Berry made numerous objections, which were overruled, during the trial regarding the cumulative nature of many of the photographs.

In this Court's review of the photographs submitted on appeal, we do not find that the trial court abused its discretion in admitting the photographs. *See State v. Copen,* 211 W.Va. 501, 505, 566 S.E.2d 638, 642 (2002) ("After examining the photographs and the circumstances of the case, this Court cannot find such a showing of clear abuse."). "They were relevant and probative in showing the jury the condition, identity, and location of wounds on the body, and any speculative prejudicial effect was outweighed." *State v. Waldron,* 218 W.Va. 450, 458, 624 S.E.2d 887, 895 (2005) (per curiam). As this Court noted in *Derr,* "[g]ruesome photographs simply do not have the prejudicial impact on jurors as once believed by most courts. 'The average juror is well able to stomach the unpleasantness of exposure to the facts of a murder without being unduly influenced.... [G]ruesome or inflammatory pictures exists more in the imagination of judges and lawyers than in reality.'" *Derr,* 192 W.Va. at 177 n. 12, 451 S.E.2d at 743 n. 12 (quoting *People v. Long,* 38 Cal.App.3d 680, 689, 113 Cal.Rptr. 530, 537 (1974)).[22] Although we question the State's need for using so many photographs, especially when Mr. Berry was not contesting the fact that he killed the victims, any error in the quantity of photographs was harmless.[23]

---

**22.** It does not appear that any of the photographs were actual autopsy photographs. *See Waldron,* 218 W.Va. at 458, 624 S.E.2d at 895 ("[W]e recognize[ ] that a body of a victim after autopsy procedures may be gruesome; however, where the body has not undergone such procedures, the picture is not gruesome.").

**23.** We summarily reject Mr. Berry's last assignment of error alleging prosecutorial misconduct. Mr. Berry alleged the following as prosecutorial misconduct: (1) the prosecutor advanced invalid arguments to prevent Mr. Berry from presenting a defense and mitigation evidence; (2) the prose-

## IV.

## CONCLUSION

We affirm the judgment in this case finding Mr. Berry guilty of two counts of first-degree murder, two counts of use of a firearm, and the imposition of two consecutive life sentences without the possibility of parole.

Affirmed.

---

cutor tried the case before her former spouse; (3) the prosecutor introduced an excessive number of photographs; (4) the prosecutor argued that Mr. Berry was not under arrest when he gave a voluntary statement; and (5) the prosecutor misrepresented evidence to the grand jury. None of these issues, as described in Mr. Berry's brief, constitutes misconduct. "We therefore agree with the contention of the State on this issue and find no merit to [Mr. Berry's] allegation of prosecutorial misconduct." *State v. Kendall,* 219 W.Va. 686, 695, 639 S.E.2d 778, 787 (2006).